2008 VT 115

**171234 CANADA INC. v. AHA WATER COOPERATIVE, INC. and Timm, Hawkins & Assoc., Van deKamer, Perry, Bonnell, Usheroff, et al.**

[968 A.2d 303]

No. 07-086

¶ 1. August 25, 2008. Defendant, AHA Water Cooperative, Inc. (AHA), appeals orders of the Franklin Superior Court, granting summary judgment to plaintiff, 171234 Canada Inc. (Canada Inc.) and denying a related motion for intervention. On appeal, AHA argues that the court erred in: (1) granting summary judgment to Canada Inc. on the basis of a theory not raised by either party in the pleadings; (2) denying a motion to dismiss for lack of an indispensable party; and (3) misapplying common and statutory law governing common-interest ownership. A group of landowners in the development at issue appeal the denial of their motion to intervene. We affirm in all respects.

¶ 2. This litigation involves the Alpine Haven development, the subject of an earlier decision of this Court. See *Alpine Haven Prop. Owners Ass'n v. Deptula*, 2003 VT 51, 175 Vt. 559, 830 A.2d 78 (mem.). Pursuant to deed covenants, the developer supplied water to most of the properties in Alpine Haven. The developer transferred the water system to AHA, with approval of the Public Service Board. Since that time, AHA has provided water to most of the property owners, including Canada Inc. In the period leading up to September 2, 2004, Canada Inc. experienced difficulty with the quantity and quality of water supplied by AHA. On September 2, Canada Inc. notified AHA of its withdrawal from the cooperative and its intention to dig its own well to supply water for the property.

AHA responded to the withdrawal letter, explaining that Canada Inc. could not withdraw from the cooperative or stop paying for water services, "[b]ecause the obligation to render potable water exists as a matter of a deed covenant [and] remains unaffected by [resignation from] membership in the Cooperative." AHA's position was that the payment and provision of water were governed by a restrictive deed covenant, which provided in pertinent part:

> The Grantor hereby agrees to keep and maintain said right of way in a good, reasonable state of repair, and it agrees to supply water to said premises as now piped and it agrees to supply garbage removal for said premises as now in existence. For these services, the grantees, their heirs, executors, administrators or assigns, shall pay to the grantor, its successors and assigns, a reasonable annual fee therefor.

¶ 3. In response to AHA's continuing demands for payment, Canada Inc. began the present action in October 2004. This appeal involves Canada Inc.'s request for a declaratory judgment. Canada Inc. argued that a declaratory judgment was appropriate, because AHA's bylaws "provid[ed] for the voluntary withdrawal of members." Canada Inc. claimed that it had voluntarily withdrawn in compliance with the bylaws and, in March 2006, moved for summary judgment on that basis.

¶ 4. AHA filed its own summary-judgment motion in response. AHA primarily emphasized that Alpine Haven was a common-plan community, governed by restrictive covenants covering the land. Because Canada Inc.'s land was covered by such a covenant, AHA reasoned, Canada Inc. had to comply with the terms of the covenant. In AHA's view, the covenant required owners to pay for water services whether or not any services were provided. For a number of reasons, AHA also argued that the bylaw provisions on which Canada Inc. relied did not control the outcome of the case.

¶ 5. In its reply, Canada Inc. disagreed that its membership in a common-scheme development created an obligation to pay for water services no longer received. Canada Inc. further argued that, even if a common scheme were found, the effect of the covenant "would only be to extend other property owners within the scheme a right to enforce [grantor's] rights . . . as if they stood in [grantor's] shoes." According to Canada Inc., neither the language of the covenant nor the original intent of the parties suggested that the covenant required owners to pay when no longer receiving any services. Attached to Canada Inc.'s reply was an affidavit from the original developer of Alpine Haven, who stated that his intent in drafting the covenant language was to require lot owners to pay for water only if they chose to receive it.

¶ 6. AHA filed no further response. On August 28, 2006, the court granted summary judgment to Canada Inc. The court first examined the covenant language and concluded that the covenants were ambiguous as to whether "Canada, Inc.'s obligation to pay a reasonable fee is contingent upon Canada, Inc. accepting water from AHA." Concluding that the covenant was ambiguous, the court proceeded to determine, based on all the evidence, the intent of all the original parties to the covenant. Based primarily on the affidavit of the developer, the court concluded that "the original parties . . . intended the covenant to mean that the property owner must pay a reasonable annual fee for the supply of water if and only if the owner accepts water service."

¶ 7. The court further concluded that this interpretation was in accord with the bylaws in effect on the date of Canada

Inc.'s first attempt at withdrawal. The court stated that the bylaws were relevant insofar as they "may be considered in interpreting an ambiguous provision." The court read the bylaws as permitting withdrawal from the cooperative and termination of all payment obligations but requiring payment of "a disconnect fee and all fees owed for services . . . prior to the termination."

¶ 8. The court also reasoned that AHA had failed to raise an issue of material fact regarding the intent of the original parties to the deed and whether the Vermont Uniform Common Interest Ownership Act (UCIOA) applied to the facts of the case. With respect to the UCIOA, the court stated that AHA had neither recorded a declaration nor referred to the declaration in the deeds, as the UCIOA requires.

¶ 9. Later, on September 29, 2006, property owners — residents of Alpine Haven and members of the AHA Cooperative — moved for intervention, joinder, and related relief under Vermont Rules of Civil Procedure 24 and 19. Property owners argued that the UCIOA and the common law entitled them to enforce their rights as members of the common-interest community against any other member, including Canada Inc. Accordingly, property owners argued, the court should grant their motion for intervention and recognize them as necessary and indispensable parties.

¶ 10. Furthermore, property owners suggested, Canada Inc. acted in bad faith in failing to join them as necessary parties. In support of this claim, property owners asserted that Canada Inc. did not raise any argument about the ambiguity of the covenant until Canada Inc. filed a motion in opposition to AHA's motion for summary judgment. According to property owners, Canada Inc.'s failure to formally amend its pleadings or to serve all affected property owners with process was evidence of Canada Inc.'s bad faith.

¶ 11. Also on September 29, 2006, AHA moved to vacate the court's decision "as void ab initio." (Emphasis omitted.) As a part of this motion, AHA argued that Canada Inc. improperly filed the grantor's affidavit with its opposition to AHA's motion for summary judgment. AHA asserted that the court had based its ambiguity analysis on the wrongly submitted affidavit and that, consequently, the court "had no proper proof upon which to base a decision in favor of [Canada Inc.]." In addition, AHA argued that: (1) the court ignored the law governing common-scheme developments in its summary-judgment decision; and (2) the deeds covering Alpine Haven served as an adequate declaration under the UCIOA.

¶ 12. The court denied these motions on several grounds. First, the court addressed the motion for intervention, holding that, as a matter of discretion, property owners' motion was untimely, because property owners did not avail themselves of ample, earlier opportunities to seek intervention before the court's original summary-judgment order. The court further explained that property owners did not show either an adequate interest in the property at issue or the existence of an interest not adequately represented by AHA. The court also denied property owners' motion for joinder and dismissal for failure to join a necessary party, reasoning that the motion was untimely and that property owners were not necessary parties, as defined by V.R.C.P. 19. The court based the latter conclusion on its holding that: (1) property owners had not shown that complete relief could not be afforded Canada Inc. without joinder; and (2) property owners had failed to show that their interests would be impaired or that inconsistent judgments could arise were they not joined. Finally, the court addressed AHA's motion to vacate. AHA had argued that the court failed adequately to address whether Alpine Haven was a com-

mon-plan community and had erred in relying on an improperly submitted affidavit. The court found both of these contentions to be without merit and denied the motions. This appeal followed.

¶ 13. With one exception discussed below, AHA does not dispute the substance of the court's decision. In general, AHA's position is that the court should never have reached the construction of the deed covenant, because Canada Inc. failed to plead properly that the covenant was ambiguous or that it should be construed to allow Canada Inc. to stop paying for water service from AHA. In AHA's view, Canada Inc. improperly raised that issue in response to AHA's summary-judgment motion. We reject this characterization of events. Canada Inc. pled and always relied on the AHA bylaws in arguing that the bylaws provided for a right to withdraw from AHA and to stop paying for water service. AHA did not contest that the bylaws gave Canada Inc. the right to withdraw from AHA or that Canada Inc. had properly exercised that right. Instead, AHA answered that, irrespective of the bylaws, the deed covenant in Canada Inc.'s deed chain required AHA members to pay for water service whether or not they chose to receive the water service. In responding to AHA's argument, Canada Inc. relied on the affidavit taken from Alpine Haven's developer in order to show that participation in the water service was intended to be optional. The issue of proper deed construction arose only as a result of AHA's reliance on the covenant.

¶ 14. Although the proper characterization of the procedural posture of this case disposes of AHA's claim, we note that AHA's argument is flawed substantively, as well. For two months after Canada Inc. made its covenant-construction argument and filed developer's affidavit, AHA remained silent. AHA never made its timeliness arguments before the trial court, and the trial court had no opportunity to address them. Consequently, the arguments are not preserved. *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 20, 178 Vt. 77, 872 A.2d 292.

¶ 15. In its motion to vacate, AHA argued that it had preserved this issue. Because Canada Inc. failed to tender any affidavit in support of its motion for summary judgment, AHA argued that Canada Inc. could not file an opposing affidavit in response to AHA's cross-motion. Thus, AHA argued that it "was certainly under no obligation then, and is under none now, to respond further to [Canada Inc.'s] opposition filings." (Emphasis omitted.) We fail to see how this argument dispenses with the requirement to raise claims before the trial court. We have often stated that "[c]ontentions not raised or fairly presented to the trial court are not preserved for appeal." *Mann v. Levin*, 2004 VT 100, ¶ 12, 177 Vt. 261, 861 A.2d 1138; see *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000). Consequently, we will not address AHA's argument for the first time on appeal. See *In re Lorentz*, 2003 VT 40, ¶ 5, 175 Vt. 522, 824 A.2d 598 (mem.).

¶ 16. We turn next to AHA's arguments concerning joinder and to property owners' intervention contentions. In its post-summary-judgment motion, AHA contended that the action should be dismissed, since Canada Inc. failed to join necessary parties — namely, the other landowners in the Alpine Haven development with a similar covenant in their deeds. Rule 19, which governs joinder, states that any party "asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a) . . . who are not joined, and the reasons why they are not joined." V.R.C.P. 19(c). Rule 19(a) explains that the following persons must be joined:

> if (1) in the person's absence complete relief cannot be ac-

corded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest.

¶ 17. AHA filed a motion to dismiss on the basis of Canada Inc.'s failure to join property owners. The superior court denied this motion as untimely and rejected AHA's joinder arguments on the merits. Because we uphold the decision that AHA's joinder motion was untimely, we do not reach the merits.

¶ 18. Failure to join a party is one of the defenses that can be raised by motion. V.R.C.P. 12(b)(7). However, any indispensable-party defense must be raised in a permitted pleading, a motion for judgment on the pleadings, or "at the trial on the merits." *Id.* 12(h)(2); see *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006) (motion covered by identical F.R.C.P. 12(h)(2) cannot be raised post-trial). In this case, the summary-judgment adjudication was tantamount to a trial on the merits, and AHA failed to move to dismiss before the court granted summary judgment against it. The motion came too late, and the court did not err in so concluding.

¶ 19. The situation with respect to the motion to intervene is similar. In their intervention motion, property owners relied on Rule 24(a)(2):

[A]nyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The application to intervene must be "timely." *Id.* Like AHA's motion to dismiss, property owners' application to intervene came after the court had already granted summary judgment against AHA. The determination of timeliness is within the discretion of the trial court. *Ernst v. Rocky Road, Inc.*, 141 Vt. 637, 639, 450 A.2d 1159, 1160 (1982). In making such a determination, the trial court must consider at least four factors: "the power to have sought intervention at an earlier stage in the case; the case's progress; harm to the plaintiffs; and availability of other means to join the case." *Id.* at 640, 450 A.2d at 1160. In *Ernst*, a case in which minority stockholders in a corporation sought dissolution of the corporation, we upheld the decision of the trial court to deny intervention to a transferee of the majority stockholder, because he sought intervention only after the case was under submission and waited eight months to submit the motion. *Id.*

¶ 20. In ruling against property owners in this case, the trial court relied most on the fact that they had known of the litigation for a year and failed to seek intervention earlier. Affidavits submitted by Canada Inc. showed that property owners were aware of the litigation for at least a year before the summary-judgment decision and did nothing to intervene. Property owners reiterate that Canada Inc. failed to raise its deed-construction arguments in the pleadings. As we have stated in ¶ 13, *supra*, we reject property owners' characterization of events. More fundamentally, even if we accepted property owners' description of the relevant events,

we do not see how Canada Inc.'s actions excuse property owners' delay in asserting their rights. Property owners cannot sit idly by, depend on AHA to protect their interests, and then seek intervention to reverse the result only after AHA loses. See *Walters v. City of Atlanta*, 610 F. Supp. 730, 731-32 (D. Ga. 1985) (holding that an attempt to intervene after judgment was untimely; "[o]therwise, any potentially affected party could stand back as long as favorable disposition of the case looked predictable, only to seek leave to participate when the case was already lost"). If anything, the facts here more strongly support the court's denial of the motion than do those in *Ernst*: in this case, AHA, the only defendant, had already lost on the merits. The court acted well within its discretion in finding the motion to intervene to be untimely.

¶ 21. We come finally to AHA's argument that the court misapplied the common law of equitable servitudes and the relevant provisions of the UCIOA. In its motion to dismiss, and for the first time, AHA argued it was a common interest community, as defined in 27A V.S.A. § 1-103(7). AHA further claimed that the UCIOA gave AHA the power to charge Canada Inc. for water whether or not Canada Inc. received any. AHA contended that a similar right could be found in the common law. AHA has not challenged the trial court's construction of the deed covenant or Canada Inc.'s claim that the AHA bylaws allow it to withdraw from AHA and stop receiving water. Accordingly, we recognize that AHA must find some other source for its right to charge Canada Inc. for water. Neither the UCIOA nor the common law, however, provide any assistance to AHA in this case.

¶ 22. For the purposes of this holding, we assume that Alpine Haven is a common-scheme development because of the deed covenants. If we make this assumption, the deed covenants determine the rights and obligations of the common-scheme participants. See *McDonough v. W.W. Snow Constr. Co.*, 131 Vt. 436, 441, 306 A.2d 119, 122 (1973) (explaining that deed covenants control the obligations and rights of common-scheme participants). The trial court construed the applicable deed covenant to require Canada Inc. to pay only for water services that were actually received. After choosing to disconnect from the AHA water service, Canada Inc. was under no obligation to pay for water it did not receive.

¶ 23. The result under the UCIOA is the same. Again, for the purposes of our analysis, we assume that the provisions of the UCIOA govern the water services provided to Canada Inc. The UCIOA provides in pertinent part:

> If a declarant or any other person subject to this title fails to comply with any provision of this title or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief.

27A V.S.A. § 4-117(a). AHA must find its right to extract payment from Canada Inc. in § 4-117. Since there is no provision of the UCIOA directly involved in this dispute, AHA must show that Canada Inc. has violated its declaration or bylaws. By not challenging this point, AHA has conceded that Canada Inc. has not violated the AHA bylaws. Under AHA's UCIOA theory, the "declaration" is the common covenant found in each deed. As we stated above, Canada Inc. has not violated the applicable covenant. The UCIOA gives AHA no right to charge Canada Inc. for water it chooses not to receive.

*Affirmed.*