NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 90

No. 2019-184

| | |
|---|---|
| Sarita and Nafis Khan, Eric and Katherine Gadpaille, Judith LaPointe and Robert Earley | Supreme Court |
| v. | On Appeal from Superior Court, Franklin Unit, Civil Division |
| Alpine Haven Property Owners' Association, Inc. | December Term, 2019 |

Robert A. Mello, J.

Barry Kade, Montgomery, for Plaintiffs-Appellants.

Robert W. Scharf of Kohn Rath Danon Lynch & Scharf, LLP, Hinesburg, for Defendant-Appellee.

PRESENT: Reiber, C.J., Robinson,[1] Eaton and Carroll, JJ., and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1.    **REIBER, C.J.**   This is one in a series of cases involving Alpine Haven, a large residential development in the adjoining Towns of Montgomery and Westfield, Vermont. This appeal follows a remand in which we directed the trial court to determine the basis on which the Alpine Haven Property Owners Association, Inc. (AHPOA) could bill plaintiffs for services that AHPOA provides. The trial court determined that those plaintiffs who owned "Chalet Lots" were required by their deeds to pay AHPOA a reasonable fee for road maintenance, snowplowing, and garbage removal; those plaintiffs who owned "Large Lots" were required by statute and equitable

---

[1] Justice Robinson was present for oral argument but did not participate in this decision.

principles to contribute to AHPOA's road maintenance costs. The court concluded that plaintiffs failed to show any material factual dispute regarding the reasonableness or accuracy of AHPOA's fees. It thus ordered plaintiffs to pay AHPOA's annual assessments between 2011 and 2018. Plaintiffs challenge this decision on appeal. We affirm.

¶ 2. This case began in 2011 when plaintiffs filed a declaratory judgment action to "determine their deeded property rights" and "to determine a reasonable fee for services they receive from [AHPOA]." AHPOA counterclaimed for its unpaid annual assessments.

¶ 3. We detailed the history of this case, the evolution of Alpine Haven, and the creation of AHPOA in Khan v. Alpine Haven Prop. Owners' Ass'n (Khan I), 2016 VT 101, 203 Vt. 251, 153 A.3d 1218. Essentially restated, Alpine Haven is "a sprawling subdivision located along Vermont Route 242 in the Towns of Montgomery and Westfield." Id. ¶ 1. It "contains more than eighty-five lots with homes," referred to as "Chalet Lots," as well as "several undeveloped or 'large lots.' " Id. ¶ 10. Plaintiffs own Chalet Lots and/or Large Lots. AHPOA owns and maintains a 4.5-mile private road network within Alpine Haven. Almost all owners need these roads to access their property. AHPOA is also responsible for the streetlights, snowplowing, and garbage disposal within Alpine Haven.

¶ 4. In Khan I, we considered if Alpine Haven was a "preexisting common interest community" under 27A V.S.A. § 1-204 and thus subject to the provisions of the Vermont Common Interest Ownership Act. 2016 VT 101, ¶¶ 1, 7. We concluded that it was not and remanded for a determination of the basis on which AHPOA could "calculate the fees for deeded services it has provided to each of [the Chalet Lot] properties and how much of a fee, if any," it could charge the Large Lot owners "for their rights of way." Id. ¶¶ 40-41 (alterations omitted) (quotation marks omitted).

¶ 5. On remand, AHPOA moved for summary judgment and plaintiffs moved for partial summary judgment in their favor. Following oral argument, the court granted summary judgment

to AHPOA. It relied on the following undisputed facts. Pursuant to the terms of plaintiffs' Chalet Lot deeds, AHPOA must keep and maintain the right-of-way in a good, reasonable state of repair, supply water and garbage removal, and maintain the streetlights. Plaintiffs, in turn, must pay AHPOA "a reasonable annual fee" for these services.[2] The deeds do not make the reasonable annual fee contingent on actual use of these services or membership in AHPOA. The court thus found these factors immaterial to plaintiffs' obligation to pay a reasonable fee.

¶ 6. The Large Lot deeds conveyed as an appurtenance "the right to use in common with others, those roadways in the Alpine Haven subdivision which provide ingress and egress to and from Vermont Route 242 to the conveyed premises." While the deeds did not expressly require plaintiffs to contribute to road-maintenance costs, the court found that plaintiffs were required to do so by equitable principles and by statute. See Hubbard v. Bolieau, 144 Vt. 373, 375-76, 477 A.2d 972, 973 (1984) (recognizing longstanding equitable principle that "when several persons enjoy a common benefit, all must contribute rateably to the discharge of the burdens incident to the existence of the benefit" and "[t]he obligation to contribute" is designed "to prevent unjust enrichment" and "applies in the absence of an express agreement" (quotation omitted)); see also Kelly v. Alpstetten Ass'n, 131 Vt. 165, 168, 303 A.2d 136, 138 (1973) (recognizing "equitable principle that requires persons in the enjoyment of a common benefit to all contribute their proportionate share to the discharge of the burdens incidental to the existence of the benefit" and that "[t]his principle applies in the absence of agreement, and is subject to modification by the specific terms of a particular grant"). This equitable principle is codified at 19 V.S.A. §§ 2701, 2702 ("In the absence of an express agreement or requirement governing maintenance of a private road, when more than one person enjoys a common benefit from a private

---

[2] There are slight but inconsequential variations in the deed language with respect to these mutual obligations.

3

road, each person shall contribute rateably to the cost of maintaining the private road, and shall have the right to bring a civil action to enforce the requirement of this section.").

¶ 7. Construing the deeds and applicable law together, the court concluded that the Large Lot owners must pay for their use of and access to the entire Alpine Haven road network and not just the portion of the road that they allegedly used. It reasoned that the Large Lot owners knowingly purchased property in a private development with a network of roads; they were granted common access to, and they benefited from, the roads. They were thus required to contribute ratably to the maintenance of the roads.

¶ 8. The court further found that while Alpine Haven was not a legally recognized common-interest community, it operated, as a practical matter, as one unified development for the purpose of providing a means to access plaintiffs' properties. Plaintiffs had the continuing right to utilize that access at any time. This access enhanced private and commercial access to their properties and allowed for future development possibilities. As compared to landlocked parcels, the court found that these access rights added value and potential benefit to the Large Lots regardless of whether plaintiffs decided to use some or all roads.

¶ 9. Finally, the court found that a "ratable" contribution as used in 19 V.S.A. § 2702 did not necessarily mean proportionate to use but instead depended on the particular circumstances of each case. See Restatement (Third) of Prop.: Servitudes § 4.13 cmt. e (2000) ("The responsibility of each user should reflect a fair proportion of the costs. The basis of fair apportionment will vary depending on the circumstances."). It concluded under the circumstances here that plaintiffs must pay a reasonable fee for maintaining all existing roads and associated infrastructure.

¶ 10. The court thus turned to the specific fees charged by AHPOA. Relying on AHPOA's statement of undisputed facts, it found that AHPOA used a three-tiered billing system: (1) road maintenance fees only; (2) deeded services including road maintenance and street lights

4

and garbage removal; and (3) AHPOA member services, which in addition to the above, included driveway snowplowing and basic recreational services associated with access to common-area, pool, and tennis facilities. AHPOA's bills also included an average 15% surcharge to cover operating and overhead costs.[3]

¶ 11. AHPOA stated that maintaining the roads was its greatest expense. Using audited financial information for the prior six years, and identifying direct costs, the road service cost averaged $1438 per property. AHPOA calculated the right-of-way fee for each property by adding up its direct costs and excluding all costs attributable to other services, together with the proportional indirect costs of overhead divided by the number of properties. It stated that this was an accepted accounting practice. Garbage collection added an average of $340 per unit to the cost, bringing the total for the deeded services to $1778.

¶ 12. The court found that plaintiffs summarily disputed these costs, fees, and surcharge but provided no tangible support for their contention that the fees and costs for road maintenance and garbage removal were unreasonable. It noted that this Court had deemed AHPOA's fees reasonable in two other cases, including, in Brewin, the inclusion of overhead. See Alpine Haven Prop. Owners' Ass'n v. Brewin, 2018 VT 88, ¶¶ 15, 30, 208 Vt. 462, 198 A.3d 533; Alpine Haven Prop. Owners Ass'n v. Deptula, 2003 VT 51, ¶ 26, 175 Vt. 559, 830 A.2d 78 (mem.). Citing Brewin, 2018 VT 88, the trial court rejected plaintiffs' assertion that AHPOA's fees included items and expenses that they, as nonmembers, should not have to pay. It found that AHPOA had supported its requests with an audit report indicating its billing was accurate, while plaintiffs, in response, simply "argued conclusions and innuendo while apparently foregoing discovery on the billing issues and producing no submission which raises a material issue related to [AHPOA's] invoices."

---

[3] In fact, as discussed below, the fee includes overhead as well as a 15% surcharge for nonmembers to account for nonmonetary contributions by AHPOA members.

¶ 13. The court rejected plaintiffs' implied invitation to parse AHPOA's billing in search of items that plaintiffs found objectionable. The question here, the court explained, was whether plaintiffs demonstrated that AHPOA breached the covenant of good faith and fair dealing in calculating its fee. See Brewin, 2018 VT 88, ¶ 19. Based on the undisputed evidence, the court concluded that they had not. The court thus ordered plaintiffs to pay the outstanding bills from 2011 to 2018. This appeal followed.

¶ 14. Plaintiffs argue that AHPOA failed to meet its burden of proof and show that it was entitled to summary judgment. They complain that the court failed to critically examine "the formal and substantive sufficiency of [AHPOA's] submissions" and argue that the evidence does not establish that AHPOA's fee structure, which includes overhead, is reasonable. They further contend that the court should not have accepted the "unsupported opinions of AHPOA's [e]xperts." With respect to the Chalet Lots, they argue that they have the right to refuse garbage service and they should not have to pay for this service if they refuse it. They also assert that they should not have to pay the costs associated with removing snow from the roads because that is not encompassed in road maintenance. As to the Large Lots, plaintiffs argue that they receive no benefit from AHPOA's road maintenance and thus should not have to pay for it. Plaintiffs argue that our decisions in Deptula and Brewin are inapposite, the former because the plaintiffs there did not engage in discovery regarding costs and the latter due to different deed terms.

¶ 15. We review the court's summary judgment decision de novo, "using the same standard as the trial court." Morisseau v. Hannaford Bros., 2016 VT 17, ¶ 12, 201 Vt. 313, 141 A.3d 745. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). "In determining whether a dispute over material facts exists, we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28, 742

A.2d 734, 736 (1999). "[T]he party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings, but must set forth specific facts showing that there is a genuine issue for trial." Id. (alteration omitted) (quotation omitted).

¶ 16. It is not entirely clear which party would have had the burden of proof at trial. Plaintiffs filed a declaratory judgment action to "determine their deeded property rights" and "to determine a reasonable fee for services they receive from [AHPOA]." AHPOA counterclaimed to recover unpaid fees. We directed the trial court to answer two questions on remand, which relate to both parties' claims. The parties filed cross-motions for summary judgment. In that summary judgment was granted on AHPOA's collection claim (as opposed to plaintiffs' claim for declaratory relief), we conclude that AHPOA demonstrated its entitlement to summary judgment here. See generally 10A C. Wright et al., Federal Practice and Procedure § 2727.1 (4th ed. 2020) (explaining that "if the movant bears the burden of proof on a claim at trial, then its burden of production [in support of a motion for summary judgment] is greater" and "[i]t must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing").

I. Chalet Lots

¶ 17. We begin with the Chalet Lots. At the outset, we note, as did the trial court, that we have twice rejected challenges by other homeowners to the reasonableness of AHPOA's fees. See Brewin, 2018 VT 88, ¶ 1; Deptula, 2003 VT 51, ¶ 1. While the deed language in Brewin differs in part from that involved here, Brewin nonetheless guides our analysis with respect to the Chalet Lots. We do not find Deptula distinguishable on the ground identified by plaintiffs to the extent plaintiffs' argument can be understood. The legal principles we enunciated there plainly apply in this case. See 2003 VT 51, ¶¶ 23, 26 (explaining that deeds at issue allowed AHPOA to "collect a reasonable fee, as opposed to requiring a pro rata share of actual costs," and that, "[c]onsidering the entire record," homeowners raised no genuine issue of material fact showing

7

that the nonmembers' rate structure or fees were unreasonable," and recognizing that "repeated judicial determinations ha[d] reached the same conclusion").

¶ 18. In Brewin, 2018 VT 88, AHPOA filed suit to collect unpaid annual assessments from the defendants, who owned a Chalet Lot. As here, the defendants' deed required AHPOA to maintain the right-of-way, supply water, supply garbage removal, and maintain the streetlights. The deed provided that these services would be provided "at a fee to be determined by the grantor." Id. ¶ 6. We held that AHPOA's fee was "subject to the implied covenant of good faith and fair dealing," and thus, "the appropriate question" was "whether the fee that AHPOA charged fell beyond the bounds of reasonableness." Id. ¶¶ 18, 19. We are faced with a similar question here.

¶ 19. We concluded in Brewin that the defendants failed to "establish that AHPOA violated the community standards of decency, fairness or reasonableness that the covenant of good faith and fair dealing seeks to protect." Id. ¶ 20 (quotation omitted). We emphasized that "AHPOA presented substantial evidence to support the reasonableness of its assessment, [and] [the] defendants presented no evidence of bad faith." Id. We found unpersuasive "[the] defendants' two primary counterarguments—[that] they should only be accountable for their share of that portion of the Alpine Haven road network that is coextensive with their right-of-way and that they should not be compelled to share in the full cost of the overhead associated with AHPOA's performance of its duties." Id.

¶ 20. In reaching our decision, we recounted the "substantial evidence" that AHPOA presented "to support the reasonableness of its assessment." Id. ¶ 21. AHPOA explained why it was neither feasible nor reasonable to base its fees on "actual use." Id. ¶ 22. The trial court had determined "that AHPOA's assessment reflected its expenses," and we noted that we had "deemed the precise approach taken by AHPOA—an annual fee based on actual costs plus overhead—to be reasonable" in a prior case. Id. ¶ 24. Indeed, we found the same fee, adjusted for inflation, reasonable in Deptula. Id.

8

¶ 21. We found the assessment within the bounds of reason even if the defendants were correct that their deed obligated them to pay only for the use of a limited right-of-way, rather than share in the costs of the entire road network. Id. ¶ 26. We also found that AHPOA's inclusion of overhead costs in its annual assessment did not show bad faith and there was no showing that the overhead charged was unreasonable. Id. ¶¶ 28-29. "We thus conclude[d], as a matter of law, that AHPOA did not breach the covenant of good faith and fair dealing in determining the fee charged to [the] defendants for its services." Id. ¶ 30.

¶ 22. We reach the same conclusion here with respect to the Chalet Lots. As in Brewin, the fee that AHPOA charges must be "reasonable," i.e., "within the bounds of reason."[4] Id. ¶ 26. The term "reasonable" is used expressly in plaintiffs' deeds and need not be implied as in Brewin. As in Brewin, AHPOA submitted extensive evidence in support of its summary judgment motion to show how it calculated its fees and why its fees were reasonable. This included, among other things: deposition testimony from Nicholas Barletta, a former Certified Public Accountant and AHPOA president; the Service Costs and Fee Structure Reports he developed based on his review of six years of expenses; a letter from a CPA firm that reviewed the Fee Structure Reports; an affidavit from Mr. Barletta; an affidavit from Michael Patch, who was an expert witness on road costs and fees, and who opined that the overall road costs were reasonable and less expensive than those in other developments; and an affidavit from Walter Knight, an AHPOA board member, who

---

[4] As in Brewin, "the analysis in this case" with respect to the Chalet Lot plaintiffs "begins and ends with the provisions in [their] deeds, which allow AHPOA to set the fees, subject to the constraints of good faith and fair dealing." 2018 VT 88, ¶ 15. Given that their deeds allow AHPOA to charge a reasonable fee for the services it provides, we reject plaintiffs' suggestion that the equitable principles of Hubbard, 144 Vt. 373, 477 A.2d 972, apply. See Brewin, 2018 VT 88, ¶ 17 (so holding) (citing Hubbard, 144 Vt. at 375-76, 477 A.2d at 973 ("The obligation to contribute [rateably to the discharge of the burdens incident to the existence of the common benefit] applies in the absence of an express agreement . . . .") and 19 V.S.A. § 2702 ("In the absence of an express agreement or requirement governing maintenance of a private road, when more than one person enjoys a common benefit from a private road, each person shall contribute rateably to the cost of maintaining the private road . . . ." (emphasis added)).

attested to his experience in property acquisition and development in Vermont and expressed his opinion that ease of road access significantly increases the value of parcels of land, and who also outlined ways in which road maintenance benefited the Large Lots. Plaintiffs did not, in response, provide evidence to show that AHPOA's fee was unreasonable. Its conclusory assertions do not suffice.

¶ 23. We find plaintiffs' attacks on AHPOA's evidence unpersuasive. As set forth above, AHPOA provided sufficient evidence to support its summary judgment motion. Based on its analysis of six years of costs, it created a tiered fee structure. It identified particular service areas and calculated overhead by establishing what percentage of costs each service area represents, and it then applied this percentage to the total overhead.

¶ 24. Contrary to plaintiffs' assertion, AHPOA's fee schedule was both examined and supported. Mr. Barletta was AHPOA's president and plaintiffs do not dispute that he had "a long career doing financial work" and that he was a retired CPA. He developed the tiered fee structure based on his review of six years of costs and he testified that, based on his experience, the fee structure was reasonable for all classes of Alpine Haven owners. He also testified that an outside CPA firm had reviewed and analyzed the fee schedule. Mr. Patch testified as an expert that the road fees were reasonable. In his affidavit, he described his extensive experience, the evidence that he relied on to reach his conclusion, the conditions in Alpine Haven that affect road maintenance, AHPOA's responsibilities with respect to road management, his visit to the site and review of the road system, his meetings with AHPOA road staff and his review of hourly costs, material costs, maintenance schedules, and equipment. He based his opinion on his expertise in establishing and maintaining roads and his review of these materials. Plaintiffs' assertion that AHPOA's experts provided "nothing but a bottom line," Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago, 877 F.2d 1333, 1339 (7th Cir. 1989), is belied by the record.

¶ 25. We note, moreover, that plaintiffs could have deposed AHPOA's road expert or put forth evidence from their own experts, but they did not do so. It is not sufficient to claim the fees are "unreasonable" simply because they are not broken down in the way that plaintiffs seek or because they are not calculated the way plaintiffs argue they should be. Plaintiffs needed to provide evidence in support of these assertions, not just conclusory arguments.

¶ 26. We found the inclusion of overhead and the amount of overhead reasonable in Brewin, and we find no basis to reach a different conclusion here. 2018 VT 88, ¶¶ 28-29 (concluding that plaintiffs failed to show that "AHPOA acted in bad faith by including its overhead costs in its annual assessment" and failed to show that overhead costs, which included litigation-related expenses, were unreasonable). AHPOA's overhead costs are based on a percentage of its total costs by category. Plaintiffs pay for deeded services and a share of overhead attributable to these services. AHPOA was not required to provide plaintiffs with a detailed breakdown of overhead costs and its failure to do so does not create a factual dispute, as plaintiffs argue. Its decision to adjust the overhead costs for certain seasonable services, like the pool and driveway plowing, that share overhead with other year-round services was reasonable.

¶ 27. AHPOA also provided an undisputed reasoned basis for its imposition of an additional service fee on nonmembers. In his affidavit, Mr. Barletta explained that AHPOA members had a responsibility and liability that nonmembers did not. He stated that members donated their time and expertise to manage and operate AHPOA's resources in a way that benefits the entire Alpine Haven community. The 15% surcharge was added to account for the nonmonetary contribution of AHPOA members. It is reasonable to require all homeowners who share and benefit from the work that goes into providing deeded services to share the cost of that service, including attempting to equalize nonmonetary contributions among Alpine Haven residents. The resulting fee is less than the member fee and within the bounds of reasonableness.

11

¶ 28. With respect to the provision of garbage service we agree with the trial court that plaintiffs' deeds plainly do not condition AHPOA's right to charge a reasonable fee for this service on plaintiffs' actual use of this service. Plaintiffs indicated in their response to interrogatories that they want the option of periodically stopping, but not formally terminating, their deeded right to garbage removal. In his affidavit, Mr. Barletta averred that AHPOA did not provide rebates to homeowners who periodically declined garbage service because AHPOA had an obligation to provide the service and it incurred costs to maintain its capacity to do so. Absent a formal and final relinquishment of plaintiffs' right to garbage removal under their deeds, it is reasonable for AHPOA to include a charge for garbage removal as part of a "reasonable fee" to account for its fixed costs in providing this service and to ensure its ability to continue providing this service in the future.

¶ 29. Plaintiffs argue that the garbage-removal provision in their deeds does not run with the land, but they do not recite the elements applicable to such an assertion or discuss why they are not satisfied here. See Albright v. Fish, 136 Vt. 387, 393, 394 A.2d 1117, 1120 (1978) (stating that for covenant to run with the land, it "must be in writing," "the parties must intend that the covenant run with the land," "the covenant must 'touch and concern' the land," and "there must be privity of estate between the parties"). Their briefing on this point is inadequate. See Johnson v. Johnson, 158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n.* (1992) (stating that this Court will not address contentions so inadequately briefed as to fail to minimally meet standards of V.R.A.P. 28(a)); V.R.A.P. 28(a)(4) (providing that appellant's brief should explain what issues are presented, how they were preserved, and what appellant's contentions are on appeal, with citations to authorities, statutes, and parts of record relied upon).

¶ 30. In support of this argument, plaintiffs simply assert that if the Alpine Haven property owner in 171234 Canada Inc. v. AHA Water Coop., Inc. 2008 VT 115, 184 Vt. 633, 968 A.2d 303 (mem.), was allowed to terminate a deed provision stating that the grantor would provide

12

water to its premises, then "[i]t is difficult to imagine that the grantor would have intended to have customers to be bound to his system of garbage collection." There is no basis to infer such intent here. In 171234 Canada Inc., the trial court found the applicable covenant—wherein the grantor "agree[d] to supply water to said premises as now piped"—to be ambiguous. 2008 VT 115, ¶ 2. To support its interpretation of this ambiguous provision, the property owner submitted an "affidavit from the original developer of Alpine Haven, who stated that his intent in drafting the covenant language was to require lot owners to pay for water only if they chose to receive it." Id. ¶ 5. The trial court's decision rested largely on this affidavit; it further found that the property owner's decision to terminate the water service was consistent with the bylaws in effect at the time, a position that was uncontested. Id. ¶¶ 7, 13.

¶ 31. Plaintiffs did not present any evidence similar to that presented in 171234 Canada Inc. and their reliance on this case is unpersuasive. Because plaintiffs offer no support for the premise of their argument, we do not consider their assertion that if garbage removal "is not a deeded servitude," then it "must be a service contract."

¶ 32. Finally, we conclude as a matter of law that clearing the roads of snow lies within a commonsense understanding of the term "maintenance." See, e.g., In re Vt. State Emps.' Ass'n, 2005 VT 135, ¶ 14, 179 Vt. 578, 893 A.2d 338 (mem.) ("Where, as here, the language of a contract is clear, the parties are presumed to be bound by the plain and ordinary meaning of the language used."). It is a necessary part of keeping the roads in good and reasonable condition as required by the terms of the Chalet Lot deeds.

¶ 33. We find plaintiffs' reliance on Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.), 52 F.3d 41 (2d Cir. 1995), misplaced. In that case, the court reviewed an allocation made by a homeowners' association for a planned community that included a marina. Individuals who owned marina slips, but not homes, were charged a portion of the annual budget, but only homeowners could vote on the budget allocations.

During the period in question, the homeowners voted to have the owners of the marina slips pay a much larger share of the budget than in prior years—53% as opposed to 14.25%—"a three-fold percentage increase in the amount of the allocation from previous years and over an eight-fold increase in the dollar amount of the allocation initially recommended by the managing agent for the Homeowners Association." Id. at 43.

¶ 34. The court determined that this allocation was not protected by the business judgment rule, which "precludes judicial inquiry into the actions of corporate directors so long as those actions were taken in good faith and after a reasonable investigation." Id. at 44. "[I]f the business judgment rule does not protect a board's decision, then the burden falls upon the board to demonstrate that its actions were reasonable and/or fair." Id.

¶ 35. The Croton court found that the "Homeowners Association failed to carry the burden of showing reasonableness." Id. at 45. Its allocation "included a number of line items representing expenses that either did not benefit or only tangentially benefited the marina slipowners," including paying more than half of "the salary of the manager of the residences . . . even though the manager has no duties relating to the marina" and paying pool expenses when marina slipowners were not allowed to use the pool. Id. The court also found "a 53% allocation for the marina . . . facially unreasonable because the different wear and tear on property resulting from year-long residential use [was] significantly greater than seasonal riverbank use." Id. Based on these shortcomings, the court found the allocation "so unreasonable that bad faith must be inferred." Id. It determined that "[t]he record strongly indicates that the dominating consideration in fashioning the Marina Allocation was the residential owners' desire to lessen their own costs and that the incantations of the business judgment rule [were] driven by the lack of a legitimate rationale for the Allocation." Id.

¶ 36. We are faced with a much different situation here. The business judgment rule does not apply, nor does the burden-shifting analysis identified by the court above. Plaintiffs here made

14

no showing of bad faith, and certainly we do not find AHPOA's fee unreasonable on its face. The fact remains that plaintiffs failed to put forth any evidence that would create a material question of fact as to the reasonableness of AHPOA's fee. Summary judgment was properly granted to AHPOA with respect to the Chalet Lot plaintiffs.

## II. Large Lots

¶ 37. We similarly conclude that AHPOA was entitled to judgment as a matter of law with respect to its annual assessment for Large Lot owners. Plaintiffs do not dispute the equitable and statutory requirement that they contribute ratably. They simply argue that they receive no benefit at all from the roads and thus should not have to contribute.

¶ 38. This argument is without merit for the reasons identified by the trial court. Plaintiffs purchased land in Alpine Haven knowing that their lots were served by a private road network. They clearly receive an ongoing benefit from AHPOA's road maintenance. Plaintiffs complain that there is no written AHPOA board policy on this point, but they do not explain why a written AHPOA board policy would be needed to reach this conclusion. They also assert generally that there is no evidence of "benefit" as that term is used in Hubbard, 144 Vt. 373, 477 A.2d 972, but they do not specify what that means or what language in Hubbard they rely on.

¶ 39. We held in Hubbard that the defendant lot owners must pay the "pro rata share of costs for the maintenance of a common roadway" based on "the equitable principle that when several persons enjoy a common benefit, all must contribute rateably to the discharge of the burdens incident to the existence of the benefit." 144 Vt. at 374-75, 477 A.2d at 973 (quotation omitted). We apply that same equitable principle here. Not only are plaintiffs afforded the continuing ability to access their own property, AHPOA also presented evidence to support its contention that the value of their property is enhanced by their continuing right to use the development's roads.

15

¶ 40.    Even if plaintiffs paid for the inclusion of a deeded right-of-way at the time they purchased their properties, as they assert, their purchase price did not cover the ongoing maintenance costs. Given the benefit they receive, it is equitable, and consistent with 19 V.S.A. § 2702, for plaintiffs to contribute to maintenance of the road network within the development. See In re Goldsmith's Estate, 25 N.Y.S.2d 419, 424 (Sur. Ct. 1940) ("A ratable contribution normally means a contribution by everybody in accordance with the benefits received."); see also Restatement (Third) of Prop.: Servitudes § 4.13 cmt. e (2000) (recognizing that "basis of fair apportionment will vary depending on the circumstances"). We note that it would be impossible for AHPOA to know which roads plaintiffs used and to charge them accordingly. Plaintiffs have the right to use all of the roads and it is reasonable and equitable for them to contribute toward their upkeep whether they use them or not. We find no basis to disturb the court's decision.

Affirmed.

FOR THE COURT:

Chief Justice

16