NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 32

No. 2021-017

| | |
|---|---|
| Steven Daiello | Supreme Court |
| v. | On Appeal from<br>Superior Court, Bennington Unit, |
| Town of Vernon | Civil Division |
| v. | June Term, 2021 |
| Dale A. Merritt and Brenda Merritt | |

Cortland Corsones, J.

James W. Swift, Kevin E. Brown and Vincent J. Todd of Langrock Sperry & Wool, LLP, Middlebury, for Plaintiff-Appellee Daiello.

Kevin L. Kite and James F. Carroll of Carroll, Boe, Pell & Kite, P.C., Middlebury, for Defendant-Appellee Town of Vernon.

Andrew C. Boxer and Oliver A. Abbott of Boxer Blake & Moore PLLC, Springfield, for Defendants-Appellants Merritts.

PRESENT: Reiber, C.J., and Dooley, J. (Ret.), and Morris, Manley, and Van Benthuysen, Supr. JJ. (Ret.), Specially Assigned

¶ 1. **REIBER, C.J.** This case involves an ongoing dispute over a road in Vernon, Vermont. Defendants Brenda and Dale Merritt (neighbors) challenge the superior court's decision granting summary judgment to plaintiff Steven Daiello (landowner) and defendant Town of Vernon. They argue that the court erred by concluding (1) that Stebbins Road was properly established as a public road and (2) that landowner has a common-law right of access to his property over Stebbins Road that prevents him from proving that the Town interfered with his right to access his property. We affirm.

## I. Facts and Procedural History

¶ 2.    The instant dispute requires us to recount the history of Stebbins Road in some detail.  We then review the current landownership, prior litigation regarding the road, and the current order on appeal.  The following facts are undisputed and drawn from the parties' statements of facts submitted in connection with the motion for partial summary judgment.

### A.  History of Stebbins Road

¶ 3.    The Township of Hinsdale was established in 1753, stretching over both sides of the Connecticut River.  The town was later divided between New Hampshire and Vermont with the river as a boundary.  In 1802, the portion of the town on the Vermont side of the river was renamed Vernon.[1]

¶ 4.    In 1797, a fire destroyed the home of the Vernon Town Clerk.  The fire destroyed most of the town records, including the land records.[2]  The Vernon Land Records contain a few records predating the 1797 fire that were not stored at the clerk's home and were rerecorded in the early 1800s.  Town records memorialized after the fire describe town meetings held between 1798 and 1801.  During these meetings, the Town discussed raising money for town roads and discontinuing one road.

¶ 5.    In 1801, County Surveyor Samuel Sheppardson recorded eleven consecutive road surveys in Book 1 of the Vernon Land Records, dated between April 27 and May 4.  Each survey contains language stating "at the request and under the special direction of the Select Men of the Town of [Vernon] I surveyed a town road," or similar language.  None of the surveys were signed by the selectboard.  After the set of eleven surveys, Book 1 contains another road surveyed by

---

[1]  Although we discuss actions taken by the town prior to 1802, we refer to the town as Vernon for consistency.

[2]  The parties dispute the extent of the destruction—the Town and landowner argue that the fire destroyed all land records, while neighbors contend that there is no evidence that all records were lost—but there is no dispute that the fire occurred and that the clerk stored town records in his home.

Sheppardson.  Beneath the survey, the record provides: "Then we the subscribers layed out the above mentioned road as therein described," signed by the selectboard on April 29, 1801.  Beneath the signatures, it further provides: "The above is a true copy of the original and recorded September 1st 1801," signed by the town clerk.

¶ 6.    At issue in this case is Stebbins Road.  The survey describing Stebbins Road, one of the set of eleven, provides:

> Windham County, [Vernon], April 28, 1801.  Then under the Special Directions of the Select Men of the Town of [Vernon] I surveyed a Town Road called Number <u>Three</u> being two rods wide & lying one rod on each side of a line beginning at the Sign Post on the West side of the County road & about Eight rods North of the Saw mill owned by Jonathan Hunt Esq. and from thence by Eliakim Stebbins to the East line of Guilford near Mr. Gain's Saw Mill [course and distance description] to Guilford East line.  Attest Samuel Sheppardson County Surveyor.

All parties agree that the "Town Road called Number <u>Three</u>" refers to Stebbins Road.

¶ 7.    At an 1806 town meeting, the Town considered two provisions related to Stebbins Road: (1) "To see if the Town will open a road through Eliakim Stebbins' land or any part of it" and (2) "To see if the Town will discontinue the road or any part of it that goeth through Eliakim Stebbins' land."  The Town voted to create a committee to "treat with Eliakim Stebbins relative to a road through his land (viz) Jonathan Hunt, Abner Harris and the present Selectmen, and empowered them to act discretionally, either to open the road, or discontinue it, or any part of it, and to lay out a new road if they think fit."  The records do not indicate the outcome of that negotiation, but in 1809, the town considered another provision relating to the road: "To see if the Town will discontinue the road by Eliakim Stebbins' and lay one by Samuel Brook to said Warren's."  The Town "voted to dismiss without acting thereon."

¶ 8.    In 1810, at the request of the Governor, the Vernon Town Clerk wrote to the Vermont Surveyor General to help him create an official state map.  Enclosed with the clerk's letter was a map of Vernon, which included Stebbins Road.

3

¶ 9.   In 1813 and 1815, the Vernon selectboard executed and conveyed two glebe lease deeds.[3]  The 1813 lease described the premises in part as the land "southward of the road as it was laid out from Eliakim Stebbins' to Guilford."  Likewise, the 1815 lease described the premises in part as the land "Northwardly of the road, as it was laid out from Eliakim Stebbins' to Guilford."  In 1838, the selectboard executed a new lease of the land north of the road containing the same road description, "as it was laid out from Eliakim Stebbins to Guilford."

¶ 10.   In 1841, the Town petitioned the selectboard to "lay out, or alter, at your discretion, so much of the Stebbins Road, so-called, as you think the best good of the Town requires, from the sign post to the dwelling house of Eli Lee in said Vernon."  The selectboard then "established the within named Road, according to the accompanying survey," which laid out Eli Lee Road along the same general path of a portion of Stebbins Road, along what is now West Road from Route 142 to the Merritts' property.

¶ 11.   In 1904, the Town petitioned the selectboard "for the purpose of considering the matter of discontinuing the Stebbins (so called) as a Public Highway from the residence of said Geo. H. Butterfield to the town line between Guilford and Vernon"—meaning the western part of Stebbins Road.  Hearing no objection at the meeting, the board "declare[d] said road discontinued as a highway."

B.  Current Land Ownership

¶ 12.   Landowner purchased property in Vernon through a series of real estate transactions between 2000 and 2013.  His chain of title reaches back to the 1815 and 1838 glebe lot leases.[4]

---

[3]  "Glebe" land is "[l]and possessed as part of the endowment or revenue of a church or ecclesiastical benefice."  Glebe, Black's Law Dictionary (11th ed. 2019).

[4]  At the time landowner filed his complaint, part of his property remained glebe land.  On January 1, 2020, fee simple title to the glebe land vested in landowner by operation of law.  See 24 V.S.A. § 2409(b)(1).

¶ 13.    Neighbors have owned property in Vernon for over fifty years.  Their property abuts landowner's land to the east.  Neighbors' chain of title reaches back to ownership by Eliakim Stebbins, Eli Lee, and George Butterfield.  Neighbors access their property over West Road, an undisputed public road that ends at a point within their property.  Where the public road ends, the road path continues westward across neighbors' property, passing within a few feet of their home and farm buildings, and runs along the southern boundary of landowner's property.  It eventually ends at the Guilford town line.

¶ 14.    After landowner purchased his property, he began to build a residence.  He believed that the Stebbins Road path provided access to his property, although there was some uncertainty.  He sought to improve the road to access his property and asserted a right to use the path across neighbors' property, sparking this longstanding litigation.

C.  Prior Litigation

¶ 15.    Landowner first petitioned the Public Service Board (now Public Utility Commission) to declare the portion of the road at issue a public road so that he could run power lines to his property.  Neighbors intervened, arguing that the Board lacked subject-matter jurisdiction.  This Court affirmed the Board's conclusion that it lacked authority to determine a road's legal status and dismissed landowner's case for lack of jurisdiction.  See In re Doolittle Mountain Lots, Inc., 2007 VT 104, ¶ 7, 182 Vt. 617, 938 A.2d 1230 (mem.).

¶ 16.    Landowner continued to seek access to his property over Stebbins Road, causing disagreement with neighbors.  Neighbors filed suit, seeking a declaratory judgment that landowner had no right of access over the road through their property.  Landowner maintained that he was entitled to a right of access over the discontinued Stebbins Road under Okemo Mountain, Inc. v. Town of Ludlow, 171 Vt. 201, 762 A.2d 1219 (2000).  Neighbors contended that landowner was not entitled to a right of access over the road because it was not necessary.  They later amended their complaint to assert that Stebbins Road was never established as a public road because there

was no record of the Town formally laying out the road. The superior court agreed that Stebbins Road had not been properly laid out as a public road, and accordingly held that landowner lacked a right of access. The court also concluded that access over the road was not necessary because landowner had access from the western side of his property and therefore his property was not landlocked.

¶ 17. A three-Justice panel affirmed the superior court's decision on appeal. Merritt v. Daiello, No. 2010-171, 2010 WL 7799806, at *3 (Vt. Oct. 21, 2010) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo10-171.pdf [https://perma.cc/2WEZ-Q2AF]. In this 2010 decision, the Court upheld the superior court's conclusion that, absent an official act, landowner could not show that Stebbins Road was properly established. Id. As to the easement by necessity, the Court determined that it did not need to decide whether the superior court erred in finding that landowner's property was not landlocked because there was no division of commonly owned land. Id. at *4.

¶ 18. Following the 2010 decision, landowner sued the Town in 2014, arguing that the Town's failure to ensure access to the property breached the covenant of quiet enjoyment. The superior court granted summary judgment for the Town. The court concluded that landowner was bound by the determinations in the prior proceeding that Stebbins Road was not properly established as a public road and that landowner had alternative access from the west, so he was precluded from relitigating either issue. As such, landowner could not show interference by the Town to prove breach.

¶ 19. Landowner appealed, arguing that he should not be precluded from relitigating either issue. In a 2018 decision, this Court agreed, reversing and remanding the case for further proceedings. Daiello v. Town of Vernon, 2018 VT 17, ¶ 1, 207 Vt. 139, 184 A.3d 1192. The western-access issue was straightforward—in the 2010 decision, the Court did not review the superior court's finding regarding western access, so landowner was not precluded from

relitigating that issue. Id. ¶ 17. The status of Stebbins Road was a thornier question because the Court had addressed that issue on appeal. However, the Court explained that because the Town had not been a party to the 2010 decision, it was not bound by the holdings in that case and could show that the road was properly laid out to defeat landowner's claim for breach of the covenant of quiet enjoyment. Id. ¶ 21. Accordingly, the Court reasoned that it was possible for inconsistent judgments that would thwart landowner's attempts to gain access or compensation: "one that [landowner] has no right to access his property from Stebbins Road because the Town never properly laid out the road, and the other that the Town is not liable for a lack of access to [landowner's] property because the Town properly laid out Stebbins Road." Id. ¶ 22. Consequently, the Court concluded that this case fell within a narrow exception to issue preclusion rules and permitted the parties to relitigate the status of Stebbins Road, so long as neighbors were joined as an indispensable party.[5] Id. ¶ 23.

## D. Order on Appeal

¶ 20. On remand, landowner and the Town joined neighbors as an indispensable party. The Town then moved for summary judgment, arguing that Stebbins Road was properly established as a public road and therefore the Town did not breach the covenant of quiet enjoyment because it did not interfere with landowner's access to the property. Landowner cross-moved for summary judgment, likewise contending that Stebbins Road was properly established as a public road. Neighbors opposed the motions.

---

[5] The dissent argues that the 2018 decision was flawed and should be vacated. We decline to consider this issue because neighbors neither raised it in the proceedings below nor on appeal. See State v. Ovitt, 2005 VT 74, ¶ 13, 178 Vt. 605, 878 A.2d 314 (mem.) ("We have often stressed that we will not consider issues not raised in the proceeding below. An issue is not preserved for appeal unless a party raises it with specificity and clarity below, thereby ensuring that the trial court will have an opportunity to fully develop the relevant facts and to reach considered legal conclusions." (citations omitted)); McAdams v. Town of Barnard, 2007 VT 61, ¶ 8, 182 Vt. 259, 936 A.2d 1310 ("Arguments not briefed are waived.").

¶ 21. The superior court granted partial summary judgment to landowner and the Town. The court first considered the requirements to properly establish a public road in 1801 under the applicable act, passed in 1797. See Laws of Vermont, ch. XXVI, § 1, at 347-48 (1797) [hereinafter 1797 Act]. Landowner and the Town argued that the 1797 Act only required that the selectboard survey the road and record the survey in the town clerk's office. Neighbors argued that the 1797 Act also required the selectboard to take an official action to lay out the road. Looking to the plain meaning of the 1797 Act, the superior court determined that the statute gave the selectboard authority to "lay out" roads but did not require the selectboard to take an official act to exercise that power. The superior court then looked to the meaning of the term "lay out," as presently understood and as it was used in early-nineteenth-century road cases. It concluded that "laying out" a road did not imply an official act, but instead referred to the act of "determining and designating a road's existence and imprecise location."

¶ 22. The court then addressed neighbors' argument that prior decisions by this Court interpreted the 1797 Act to require an official act laying out a road. It acknowledged that in the 2010 decision, a three-Justice panel held that the 1797 Act required an official act, relying on the Court's interpretation of the statute in Austin v. Town of Middlesex, 2009 VT 102, 186 Vt. 629, 987 A.2d 307 (mem.). However, the court explained that the 2010 decision was merely persuasive authority and not binding, as the later 2018 decision remanded the case and permitted the Town to relitigate the legal status of the road. The court then concluded that Austin was distinguishable, reasoning that Austin concerned road-establishment requirements applicable in 1833 and therefore did not bear on whether an official act was required to establish a road in 1801.

¶ 23. In sum, the court concluded that the 1797 Act only required the creation and subsequent recording of a survey providing the "breadth, course, and distance" of the road, and did not require the town selectboard to take an official act to lay out a road. Pointing to the 1801

8

survey, the court concluded that the Town and landowner demonstrated that road had been properly established as a matter of law.

¶ 24. The court then turned to landowner's claim that the Town breached the covenant of quiet enjoyment. Landowner's claim was premised on the theory that the 1838 lease assured a right of access to the property through the implied covenant of quiet enjoyment, so if Stebbins Road had not been properly established, the Town breached the covenant of quiet enjoyment implicit in that lease by interfering with access to the property. Because Stebbins Road was properly established, the Town argued that landowner could not, as a matter of law, prove that the Town interfered with his right of access and breached the covenant of quiet enjoyment.

¶ 25. Under Okemo, a property owner enjoys a common-law private right of access over a discontinued or abandoned road if their property abuts the road and the road was a public road. 171 Vt. at 207, 762 A.2d at 1225. The court determined that the undisputed facts showed that landowner owned property abutting Stebbins Road and reiterated its conclusion that Stebbins Road was a public road at the time of the 1838 lease. Accordingly, the court concluded that landowner had a private right of access over Stebbins Road after it was discontinued, such that the Town was entitled to summary judgment on landowner's claim that the Town breached the covenant of quiet enjoyment. However, it clarified that its conclusion was limited to the holding that the private right of access exists and did not determine the "nature and scope" of the right of access.

¶ 26. Subsequently, neighbors filed a motion for reconsideration. They argued that the court's ruling on landowner's common-law right of access under the Okemo doctrine was premature. Neighbors asserted that Okemo does not necessarily allow a subsequent landowner to retain a right of access over a discontinued road, particularly under these circumstances where Stebbins Road had been discontinued for almost a century before landowner purchased the property and there was no evidence that any of the intervening owners used Stebbins Road to

9

access the property. They argued that the common-law right recognized in <u>Okemo</u> has been limited in subsequent cases and as codified in 19 V.S.A. § 717(c).

¶ 27. In an order granting neighbors' motion in part, the court emphasized that it found that landowner had a private right of access over Stebbins Road only insofar as landowner could not prove that the Town interfered with his ability to access his property, a necessary element for landowner to prevail on his claim for breach of the covenant of quiet enjoyment. The court clarified that its order was not intended to conclusively determine whether landowner had a private right of access over Stebbins Road, as the parties continued to dispute whether landowner has alternative means of accessing his property, whether neighbors had adversely used or possessed Stebbins Road, and the extent and scope of any right of access. The court rejected neighbors' argument that a common-law right of access only exists for the landowner who owns land abutting a public road at the time the road was discontinued and not for subsequent owners in the absence of evidence that the preceding owner used the road to access the property. It reasoned that such an interpretation would render the right of access pointless, as the right must be ongoing through the chain of title to have any real meaning. Neighbors appealed.[6]

## II. Issues on Appeal

¶ 28. Neighbors argue that the superior court erred by concluding that the 1797 Act did not require an official act of the town selectboard to lay out a road. They maintain that an official act was required and, because neither landowner nor the Town showed that the Vernon selectboard ever formally laid out Stebbins Road, the road was never properly established as a public road. Additionally, neighbors argue that even if Stebbins Road was properly established, the superior

---

[6] After the court issued the order granting partial summary judgment to the Town, landowner and the Town filed a motion seeking partial final judgment in favor of the Town under V.R.C.P. 54(b). Neighbors filed a motion seeking permission to a file an interlocutory appeal. The trial court entered partial final judgment in favor of the Town and therefore denied neighbors' request for permission to file an interlocutory appeal, reasoning that because it entered partial final judgment, neighbors were entitled to appeal as of right. See V.R.A.P. 3.

court should not have concluded that landowner has a private right of access under <u>Okemo</u>. They assert that no private right of access can exist without evidence that a road was used to access the property at the time the road was discontinued or evidence that no alternative means of access to the property exist. In their reply brief, neighbors contend that 19 V.S.A. § 717(c) codified and thus displaced <u>Okemo</u> and argue that landowner has no right of access under § 717(c).

¶ 29. We review summary judgment decisions de novo, applying the same standard as the superior court. <u>Town of Granville v. Loprete</u>, 2017 VT 101, ¶ 11, 206 Vt. 21, 178 A.3d 1013. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). "In applying this standard, we give the nonmoving party the benefit of all reasonable doubts and inferences." <u>Bartlett v. Roberts</u>, 2020 VT 24, ¶ 9, 212 Vt. 50, 231 A.3d 171 (quotation omitted).

¶ 30. We conclude that the superior court properly granted summary judgment for the Town. We hold that to establish a road under the 1797 Act, (1) an official survey had to be conducted and recorded, and (2) the selectboard had to lay out the road. However, we hold that the Act did not require the selectboard to formally record an action laying out a road, so long as there is some evidence that the selectboard recognized or approved the road as a public highway. Under this standard, we conclude that the selectboard substantially complied with these requirements and properly established Stebbins Road. Accordingly, we conclude that landowner enjoys a private right of access over Stebbins Road such that he cannot prove that the Town interfered with his ability to access his property to prevail on his claim for breach of the covenant of quiet enjoyment. We discuss each issue in turn.

### III. 1797 Act

¶ 31. We first address the requirements under the 1797 Act to establish a public road in 1801. We review the superior court's interpretation of a statute de novo. <u>Bartlett</u>, 2020 VT 24, ¶ 15. Our primary goal is to discern the Legislature's intent, and we begin by reviewing the plain

language of the statute. Id. If the language is clear on its face, we will enforce it according to its terms. Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215. If the language is ambiguous, "we resort to statutory construction to ascertain the legislative intent," and "consider the entire statute, including its subject matter, effects and consequences, as well as the reason for and spirit of the law." Id. (quotation omitted). We also look to legislative history, the circumstances of the statute's enactment, and evidence of the policy at which the statute was aimed in determining legislative intent. Id.

¶ 32.　The statute provides:

> [T]he Selectmen of the several towns in the state, shall have power, upon application of three or more freeholders of such town, to lay out new highways, or alter old ones, as they shall judge proper; and also private roads when it shall be found necessary . . . And every high way or road which shall in future be laid out or opened shall be actually surveyed, and a survey thereof made out, entered and recorded in the town clerk's office, where such high way or road lies, (and for want thereof, in the proprietors' clerk's office) ascertaining the breadth, course and distance of such road . . . .

1797 Act, § 1. The parties agree that the plain language of the statute requires the selectboard to survey a road and record that survey in the town records. They part ways over the meaning of the selectboard's authority to "lay out" highways.

¶ 33.　Neighbors argue that the authority to lay out roads necessarily required an official, recorded act showing that the selectboard decided to lay out a road. Otherwise, they reason, the interpretation would lead to an absurd result: once a survey was conducted and recorded, a selectboard "need[ed] do nothing more than think the road into being." They further argue that in Austin, this Court already interpreted the language in the 1797 Act to require a selectboard to record an official act laying out a road, and correctly applied this requirement in the 2010 decision.

¶ 34.　The Town and landowner argue that the plain language of the 1797 Act imposed only a survey requirement. They contend, as the superior court concluded, that "laying out" a road referred to the planning and construction of a roadway and does not contemplate an official act

memorializing such action. They argue that this interpretation of "lay out" is consistent with other uses of the phrase in the 1797 Act. They also point to other formal requirements imposed in the 1797 Act, as well as later developments in Vermont highway law imposing additional requirements to establish roads. They argue that these requirements highlight the absence of an official act requirement in the 1797 Act. As to Austin, they argue that the present case is distinguishable because Austin involved road-establishment requirements applicable to a road allegedly established in 1833. Alternatively, they argue that Austin was incorrectly decided.

¶ 35. The 1797 Act empowered a selectboard to "lay out new highways" and provided that "every high way . . . which shall in future be laid out or opened shall be actually surveyed." 1797 Act, § 1. The plain meaning of this language did not explicitly condition the selectboard's authority to lay out roads by requiring the selectboard to do so through an official, recorded action. Our interpretation of the statute thus turns on the meaning of "lay out."

¶ 36. The 1797 Act did not define the term "lay out," nor did it use the term consistently. In some instances, "lay out" referred to the physical construction of the road. For example, § 1 entitled landowners "through whose lands such road shall be laid" to compensation for damages "by laying such road." Id. In other instances, the term referred to the decision to construct a road in a particular location. For example, § 2 provided that, if the selectboard refused or neglected to lay out or alter a road, three landowners could appeal to the county court for the issue to be heard before a committee of landowners from adjoining towns. If the committee found "it necessary for the better accommodation of the public as well as individuals to lay out a new road, or alter one already laid out," the Act directed them to survey the road in the manner specified in § 1. Id. § 2. "[U]nless sufficient cause be shown to the contrary," the Act then directed the county court to "establish such road, as laid out by the aforesaid committee." Id. Accordingly, the term is reasonably susceptible to either interpretation. See also 39A C.J.S. Highways § 97 (2022) (defining "lay out" as locating highway and defining limits, but noting that term " 'located' is of

13

uncertain significance; it may refer to the fixing of the line which the road is to occupy; to the determination and designation, by those authorized to do so, of the precise place where the road is to be built; or to the actual construction of the road" (footnotes omitted)).

¶ 37. In Austin, the Court reasoned that the 1797 Act "referred to 'laying out' [a] road as a formal act by the selectboard," pointing to a selectboard's power " 'to lay out new highways.' " 2009 VT 102, ¶ 10 (quoting 1797 Act, § 1). To the extent that Austin relied directly on the statutory language in determining that "laying out" a road refers to a decision by the selectboard to construct a road rather than the act of construction, we agree with neighbors that this interpretation applies here. However, we cannot conclude that the 1797 Act required the selectboard to formally record its decision. In the context of the entire Act, and compared to subsequent amendments to Vermont's highway laws, it is clear that the 1797 Act did not require a selectboard to record a decision to lay out a road.

¶ 38. The Legislature knew how to impose formal recording requirements regarding road establishment. As noted above, and most importantly, the 1797 Act required road surveys to be "entered and recorded" in the town clerk's office. 1797 Act, § 1. There is no similar recording requirement conditioning the selectboard's power to lay out new roads. In later amendments, the Legislature added additional recording requirements. In 1813, the Legislature gave town selectboards authority to lay out pent roads. Laws of Vermont, ch. CXXII, § 3, at 165 (1813) [hereinafter 1813 Act]. A pent road is a public highway that was "shut up or closed at its terminal points." Wolcott v. Whitcomb, 40 Vt. 40, 41 (1867). The 1813 Act provided that selectboards could permit "the erection of gates and bars" across pent roads, but required that permission be "made in writing, signed by said selectmen, and recorded in the town clerk's office." 1813 Act, § 3, at 165-66. And in 1820, the Legislature passed a law providing that to officially open a road, a selectboard needed to "cause a certificate [of opening], signed by them, or a major part of them, to be forthwith recorded in the town clerk's office." Laws of Vermont, ch. XI, § 2, at 22 (1820)

14

[hereinafter 1820 Act]. These express recording requirements highlight the absence of any comparable provision regarding the decision to lay out a road in the 1797 Act. See Town of Milton Bd. of Health v. Brisson, 2016 VT 56, ¶ 24, 202 Vt. 121, 147 A.3d 990 ("Where the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such an action without legislative authority." (quotation omitted)).

¶ 39. In fact, the Legislature eventually amended the law to expressly require a town selectboard to record its decision to lay out a road. In 1839, the Revised Statutes provided:

> Every order of the selectmen, laying out or altering a highway, together with the survey thereof, and every order to discontinue a highway, shall be recorded in the town clerk's office, in the town, in which the highway shall be located; and copies of all orders of any court, establishing, altering, or discontinuing any highway together with a survey of so much of the road, as may be in any one town, certified by the clerk of such court, shall be recorded in the town clerk's office of such town.

1839 R.S. Title X, ch. 20, § 14 [hereinafter 1839 Act]. This language imposes a clear recording requirement. We generally presume that "amendment of [a] statute shows a legislative intent to change the effect of existing law." Montgomery v. Brinver Corp., 142 Vt. 461, 464, 457 A.2d 644, 646 (1983).

¶ 40. Given the lack of an express recording requirement in the 1797 Act and the addition of this requirement in 1839, we must presume that the codification of this requirement in 1839 expressed the Legislature's intent to add a requirement not compelled by prior law. Nothing in the record rebuts this presumption. See also In re Miller, 2009 VT 36, ¶ 14, 185 Vt. 550, 975 A.2d 1226 (applying presumption that Legislature inserts statutory language purposefully, and Court will not interpret language in manner than renders it "surplusage or irrelevant" (quotation omitted)).

¶ 41. We recognize that out of context, the lack of a recording requirement may appear to create an absurd result, as neighbors argue. Recording the decision to lay out a road creates a clear and unambiguous record of a selectboard's decision, and such recording requirements

continue in force today. See, e.g., 19 V.S.A. § 711(a) (requiring selectboard to record order "laying out, altering, reclassifying, or discontinuing" highway in town clerk's office). But in its historical context, the 1797 Act bears little resemblance to our modern road-establishment requirements, lacking many of the formalities which we now regard as essential. As our discussion illustrates, over the course of the early nineteenth century, the Legislature frequently amended the highway law, adding and amending requirements to formalize the road creation process and shape the law into the basic framework we recognize today. In 1797, Vermont's highway laws were in an early stage of development. Rather than creating an absurd result, our conclusion reflects this Court's proper role in interpreting the law as it was written.

¶ 42. Neighbors maintain that this conclusion is contrary to Austin because in that case, we held that a "formal act" of a selectboard laying out a road needed to be "duly recorded." 2009 VT 102, ¶ 8.[7] After considering that case, we hold that it does not compel us to conclude that the 1797 Act required a selectboard to record its decision to lay out a road.

¶ 43. Austin involved a dispute over the establishment of a public road in Middlesex, Vermont. The Town of Middlesex, arguing that it properly established the road, pointed to the road survey, recorded by the town clerk in the Middlesex Land Records in 1833, along with maps showing the location of the road as early as 1858. Id. ¶ 5 n.2. The same page in the records included two other surveys, which each contained a notation stating: "The above road laid out by us three rods wide and surveyed in the center by and under our direction," signed by the

---

[7] Neighbors also argue that the superior court was bound to follow the interpretation of the 1797 Act applied in the 2010 decision, derived from Austin, under Vermont Rule of Appellate Procedure 33.1(d) and principles of stare decisis. They contend that in the 2018 decision, this Court permitted landowner and the Town to introduce new facts regarding Stebbins Road but did not change the applicable law. We disagree. Although Rule 33.1(d) provides that an unpublished three-Justice panel decision may be controlling in certain situations, the 2018 decision expressly held that, once neighbors were joined as an indispensable party, the parties could relitigate whether Stebbins Road was properly established. Daiello, 2018 VT 17, ¶ 23. Nothing in the 2018 decision suggests that the Town and landowner were limited to asserting new facts and prevented from attacking the applicable law.

16

selectboard. The survey of the road at issue, however, did not contain that language or the board member's signatures. Id ¶ 3.

¶ 44. This Court determined that in 1833, Vermont law imposed three legal requirements for the official creation of a road. The first requirement came directly from the text of the 1797 Act: the road had to be "actually surveyed" and the survey had to be recorded in the town clerk's office. Id. ¶ 8 (quoting 1797 Act). The third requirement came directly from the text of the 1820 Act: the selectboard had to record a certificate of opening attesting that the road was open for public use. Id. (citing 1820 Act). As to the second requirement, the Court said:

> Second, the road had to be officially "laid out" through a formal act by the selectboard or another official body and duly recorded. See Young v. Town of Wheelock, 18 Vt. 493, 495 (1846) ("The evidence, that a road has thus been laid out and opened for travel, is usually to be found on the records of the town. The survey, the act of the selectmen, or commissioners, together with the certificate, that the road has been opened, are required to be recorded."); Patchin v. Doolittle, 3 Vt. 457, 459 (1831) (road cannot be opened without being "laid out"). . . .
>
>  . . . .
>
>  . . . Moreover, the statutes in effect in 1833 regularly referred to 'laying out' the road as a formal act by the selectboard. See, e.g., Laws of Vermont 1824, Ch. LIII, No. 1, § 1 ("selectmen . . . shall have power . . . to lay out new highways"); id No. 9, § 3 (highway "laid out" and "established" must be opened "within one year from the time it is established").

Id. ¶¶ 8, 10. The Court concluded that the town failed to show an official act of the selectboard authorizing the road. Id. ¶ 9. The town's evidence "provide[d] no evidence of official sanction," in contrast to the other surveys recorded in 1833, which clearly stated that the roads were laid out by the selectboard.

¶ 45. Austin relies primarily on Young for the proposition that a road had to be laid out through a formal, recorded act. In Young, the Court considered whether a town was liable for injuries suffered by a traveler on a road that had been laid out and surveyed in 1841, but for which the certificate of opening had not yet been filed. The Court concluded that there was no evidence

17

that the road had ever been legally opened, and therefore the town was not liable for the traveler's injuries. Young, 18 Vt. at 497. It explained that evidence that the road had been laid out and opened was usually found in the town records, as "[t]he survey, the act of the selectmen, or commissioners, together with the certificate, that the road has been opened, are required to be recorded." Id. at 495. Critically, this case involved the statutory requirements applicable in 1841. At that time, the 1839 Act required the selectboard to record an order laying out a road. See 1839 Act, § 14. As such, Young does not support the proposition that a selectboard was required to record an official act laying out a road at any time before 1839.

¶ 46. The other authorities relied upon by Austin only confirm that "laying out" a road was a necessary step in creating a road, and do not show that the law required a selectboard to record an order laying out a road before 1839. In Patchin, the plaintiff sued for trespass once the town began building a road across his property, arguing that no one had the right to enter his land until the selectboard officially opened the road by recording a certificate of opening. The Court rejected this argument, determining that the purpose of the certificate of opening was to inform the public that the road was officially open for travel. Patchin, 3 Vt. at 458-59. Consequently, it reasoned, the certificate need not be recorded for construction to begin because after a road is laid out, it cannot be opened until it is built. Id. at 458. Austin cites Patchin merely to say that a road must be laid out before it can be opened. Austin, 2009 VT 102, ¶ 8. Nothing in Patchin suggests that a selectboard was required to record an official act laying out a road. Likewise, Austin points to the 1797 Act, noting that it referred to " 'laying out' the road as an official act by the selectboard." Id. ¶ 10. However, as we discussed, nothing in the plain language of the 1797 Act required the selectboard to record that act.

¶ 47. Accordingly, to the extent that Austin relied on Young in imposing a recording requirement to lay out a road under the 1797 Act prior to 1839, we conclude that this was error. Aside from requiring that the laying out be recorded, Austin merely holds that the selectboard was

required to take some action to exercise its authority to lay out a road. It does not speak to the quantum of evidence needed to show that the selectboard properly laid out a road. In that case, there was simply "no evidence of official sanction" regarding the disputed road, particularly in comparison to the other surveys where the selectboard indicated that the roads had been "laid out by us" and signed their names.[8] Id. ¶¶ 3, 9.

¶ 48. Neither the 1797 Act nor this Court's early cases expressly determine what evidence sufficed to show that a selectboard properly laid out a road in 1801. Two of Vermont's earliest highway cases, however, shed some light on how the Court may have understood road-establishment requirements in 1812 and 1818. As the superior court noted, these decisions are "substantively shallow," but they nevertheless provide guidance as to what evidence proved that a town established a public highway.

¶ 49. In Emery v. Inhabitants of Washington, the plaintiff sought to recover damages from the Town of Washington after he was injured on a road. Brayt. 129-30, 1818 WL 1252 (Vt. 1818). No survey of the road had been recorded, but the plaintiff offered parol evidence that the town had laid out and opened the road, used it as a public highway, and maintained it as a public highway. The superior court admitted the parol evidence and found for the plaintiff, and the town appealed. The town argued that without a recorded survey, there was no evidence that the town officially acted and "it must appear from the returns of the Select men, that they acted officially, and this can be shewn only by the return of their proceedings." Id. at 129. The plaintiff argued that "laying out, opening, and surveying" were distinct acts, such that laying out and opening could

---

[8] We emphasize that we are merely clarifying one part of Austin's reasoning and not overruling its holding. Because there was no evidence of any action by the selectboard in Austin, the Court's conclusion did not depend on its erroneous statement that the selectboard was required to record a decision to lay out a road in 1833. Likewise, in Kirkland v. Kolodziej, this Court held that a town selectboard failed to comply with the statutory requirements to establish a road where there was no recorded survey of the road and no recorded act of the selectboard laying out the road. 2015 VT 90, ¶¶ 21, 29, 199 Vt. 606, 128 A.3d 407. As the lack of a recorded survey alone was sufficient to reach this holding, the Court's conclusion did not depend on the existence of a recorded act laying out the road.

only be shown through parol evidence, so the plaintiff should be able to introduce such evidence showing that the town took those actions even if the selectboard failed to record a survey. Id. at 130. The Court held: "The official acts of the officers, of the town, recognizing a road as a public highway, are proper evidence to charge the town with damages, sustained by a traveller, by reason of such highway being out of repair; and the parol evidence was properly admitted." Id. Thus, this case suggests that in the absence of a recorded survey, evidence of other official acts by the selectboard sufficed to show that the road was properly established such that the town was liable for injuries caused by its failure to maintain the road.

¶ 50. Next, in Bailey v. Town of Fairfield, the plaintiff sought to prove that a road was established in 1818 through witness testimony that the road had been used as a public highway for twelve or thirteen years. Brayt. 128, 1818 WL 1251 (Vt. 1818). The town countered that the plaintiff needed to show either "a record of the laying out and surveying of the road" or public use for fifteen years. The superior court admitted the plaintiff's proffered testimony, and the town appealed. The Court held: "On this bill of exceptions the Court determined that mere use of a road, by common travel, would not make it a public highway; but that some act of the town, by their officers recognizing the road to be a public highway, was necessary, as by describing the road in the rate-bill and warrant issued to the highway surveyors." Id. With minimal analysis, it appears that the Court rejected the town's argument that "a record of the laying out" was required.

¶ 51. Taken together, these cases suggest that the plaintiffs needed only present some evidence showing that a town selectboard established a public highway. In Emery, the Court stated that official acts of the selectboard would suffice. In Bailey, it determined that a description of the road in the rate bill and warrant issued to highway surveyors would suffice. A rate bill and warrant, which taxed town inhabitants by requiring them to perform road maintenance work, demonstrated that the town had officially sanctioned a road, as a town would not maintain roads that were not public highways. See 1797 Act, §§ 5-6 (creating procedures for towns to assess and impose taxes

20

for road maintenance by requiring selectboard to deliver to surveyors written rate bill, containing list of persons and amount each was required to work to satisfy tax, and warrant authorizing surveyor to collect tax); Folsom v. Town of Underhill, 36 Vt. 580, 588 (1864) (explaining that jury could consider road's inclusion in "rate bills of the highway surveyors as a public road on which the highway taxes are to be expended" as evidence that town properly established road).

¶ 52.    These cases stand in stark contrast to Fisher v. Beeker, Brayt. 75, 1816 WL 683 (Vt. 1816).  There, the Court considered a statute authorizing commissioners to lay out turnpike roads and to set over an old road if the selectboard determined the old road should be discontinued. The Court held that "if it does not appear from the doings of commissioners, as recorded, or from some official act of Select men, in writing, that the Select men had expressed their opinion; the setting over was irregular and void."  Id.  The Court further held that "the opinion of the Select men could not be shewn by parol."  Id.  This case, like Emery and Bailey, is brief and lacks substance.  Nevertheless, Fisher demonstrates that where the Court determined that the law required a selectboard to take an official action in writing, it held so explicitly.

¶ 53.    In sum, we conclude that the 1797 Act imposed two legal requirements to create a road: (1) an official survey had to be conducted and recorded; and (2) the selectboard had to lay out the road.  To show that a selectboard exercised its power to "lay out highways" under the 1797 Act, the proponent of the road must present evidence that the town recognized or approved the road as a public highway.  Such evidence may come in the form of direct evidence of an official recording in the town records or parol evidence of the selectboard's actions.

IV.  Substantial Compliance

¶ 54.    Having established the applicable law, we now turn to consider whether landowner and the Town have demonstrated that the selectboard substantially complied with these requirements to establish Stebbins Road as a public highway.  See Austin, 2009 VT 102, ¶ 7 ("The

21

procedure to be followed in laying out a highway is statutory and the method prescribed must be substantially complied with or the proceedings will be void." (quotation and alterations omitted)).

¶ 55. The 1801 survey clearly meets the requirements set forth in the 1797 Act: the survey was conducted, recorded in the Vernon Land Records, and described the "breadth, course and distance of the road." 1797 Act, § 1. And as explained above, although the selectboard was required to take some action to lay out a road, the 1797 Act did not require the selectboard to record that action. We acknowledge that the existence of a contemporaneous survey that was signed and "layed out" by the selectboard casts some doubt as to the significance of the lack of any similar indicia of approval on the Stebbins Road survey. See Austin, 2009 VT 102, ¶ 9 (reasoning that road was not laid out by selectboard in part because three surveys were recorded on same page of town records and "only the record for the disputed road lack[ed] formal recognition by the selectboard"). Nevertheless, the record contains several pieces of evidence from 1806 to 1841 indicating that the selectboard officially recognized Stebbins Road as a public highway.[9] Accordingly, we conclude that the selectboard substantially complied with the 1797 Act.

¶ 56. First, the meeting notice for the 1806 Vernon town meeting shows that the Town was considering whether to open or discontinue Stebbins Road and decided to establish a committee to "open the road, or discontinue it, or any part of it, and to lay out a new road if they

_____

[9] Landowner and the Town alternatively argue that because the Town's records were destroyed in the 1797 fire at the town clerk's house, we should apply the presumption of regularity to excuse the absence of any written record by the selectboard laying out the road. See Bacon v. Boston & M.R.R., 83 Vt. 421, 435, 76 A. 128, 134 (1910) (explaining that where regularity of official act requires record of predicate fact or action, Court may presume that predicate fact or action occurred in absence of record if proponent of official act provides evidence "which prevents or excuses the production of the record"); Kirkland, 2015 VT 90, ¶ 28 (concluding that parol evidence of public road "may be admissible in the form of an actual action of the selectboard or surveyor if the proponent of the public nature of the road can show that the record of the action once existed but is no longer available"). Because we conclude that landowner and the Town have presented sufficient evidence that the selectboard laid out Stebbins Road, we do not reach this argument.

22

think fit." Further, at the 1809 town meeting, the meeting notice indicates that the Town considered whether to discontinue Stebbins Road and decided not to do so. These records are consistent with the road being laid out by the selectboard at some point before 1806, and opened sometime before 1809, as a road had to be laid out before it could be opened. See Patchin, 3 Vt. at 459 (providing that once road is laid out, it must be built and then officially opened under applicable law).[10] The selectboard signed these meeting notices, showing its official recognition that the road had been laid. Moreover, in 1810, the Vernon Town Clerk sent the Vermont Surveyor General a map of Vernon in response to the Governor's request to help create an official state map. The map included Stebbins Road. Certainly, the inclusion of Stebbins Road on the map does not prove that it was validly created, but it supports the conclusion that the road was opened before 1809. It is unreasonable to infer that the town clerk would have included an unestablished road on an official map of Vermont.

¶ 57. Next, the selectboard executed leases in 1813, 1815, and 1838 that described the properties' boundaries in relation to "the road as it was laid out from Eliakim Stebbins' to Guilford" (emphasis added). The selectboard signed these leases, again indicating its recognition that Stebbins Road had been laid out. Finally, in 1841, the Town petitioned the selectboard to "lay out, or alter, at your discretion, so much of the Stebbins Road, so-called, . . . from the sign post to the dwelling house of Eli Lee in said Vernon." In response, the selectboard established Eli Lee Road, altering the portion of Stebbins Road that currently runs from neighbors' property along

---

[10] There is no record of the selectboard's decision to open the road. However, the law did not require towns to record a certificate of opening until 1820. Supra, ¶ 46. Accordingly, we presume that the absence of such record is regular. See Kelly v. Town of Barnard, 155 Vt. 296, 303-04, 583 A.2d 614, 618-19 (1990) (presuming that road was open prior to 1820 where no certificate of opening existed, as lack of certificate was regular before 1820).

West Road to Route 142, and leaving unaltered the portion running westward that abuts landowner's property.[11]

¶ 58.    Taken together, the selectboard's various acts suffice to demonstrate that the board officially recognized Stebbins Road as a public road.  See Bailey, Brayton 128 (concluding that "some act of the town, by their officers recognizing the road to be a public highway, was necessary" to show highway was properly established); Emery, Brayton 129 (concluding that "official acts of the officers, of the town, recognizing the road as a public highway" can be introduced through parol evidence to show highway was properly established).  In contrast to Austin, here landowner and the Town have presented several records indicating "evidence of official sanction."  2009 VT 102, ¶ 9.

¶ 59.    Neighbors do not dispute these facts but assert that this evidence can also support an inference that Stebbins Road was a private road that the selectboard was merely considering opening as a public road.  The 1797 Act empowered the selectboard to lay out or alter "private roads, when it shall be found necessary."  1797 Act, § 1.  This Court has explained that in the early road statutes, "private roads" referred to pent roads, which were public highways that were closed with gates or bars as opposed to open roads.  See Wolcott, 40 Vt. at 41 ("All pent roads are public highways, though called in the early statutes 'private roads,'—that is to say, they may be used by all,—but they are not open highways."); Warren v. Bunnell, 11 Vt. 600, 600-01 (1839) ("The selectmen are authorized to lay out pent roads, or private ways, as they are called in the [1797] statute . . . .").  In Warren, the Court concluded that the 1797 Act required private or pent roads to be established in the same manner as public highways.  11 Vt. at 601 (determining that 1797 Act

---

[11]  Neighbors argue that it is unlikely that the selectboard would have established Eli Lee Road where one portion of Stebbins Road was already laid.  They ask us to infer that the selectboard created an entirely new road rather than altering a portion of the old road.  In the face of the evidence showing that the selectboard recognized Stebbins Road, however, neighbors' suggested inference is unreasonable.

put "the two species of road . . . on the same footing" so private road could not be used until officially opened).

¶ 60. Here, there is no evidence that Stebbins Road was gated or barred as a private or pent road, and even if we were to infer that the selectboard established Stebbins Road as such, our case law instructs that such roads were considered public highways. Moreover, given the evidence showing that the selectboard recognized Stebbins Road, we cannot reasonably infer that the road was merely a private way across private property that was not open to the public. See Brock v. Town of Barnet, 57 Vt. 172, 176-77 (1884) (explaining that "pent roads [were] frequently laid only to the land of the persons to be specially accommodated thereby" and that those persons often construct private ways to access road, and concluding that "the laid-out portions of such ways are a part that towns may lawfully supply without supplying the whole way").

¶ 61. In sum, we conclude that landowner and the Town have demonstrated that the Town substantially complied with the statutory requirements and properly established Stebbins Road as a public road. Accordingly, the superior court correctly concluded that Stebbins Road was a public road in 1838 when the Town leased the land to landowner's predecessor in title.

## V. Right of Access

¶ 62. We now turn to consider whether the superior court properly granted summary judgment to the Town on landowner's claim for breach of the covenant of quiet enjoyment. To succeed on this claim, landowner needed to prove that the Town had interfered with his ability to enjoy, or access, his property. Accordingly, the question before the court was whether landowner had a right of access over Stebbins Road.

¶ 63. The superior court concluded that landowner had a common-law right of access over Stebbins Road under Okemo. In Okemo, this Court explained that under the common law, "when a public road is opened adjacent to private property, the owner of the abutting property obtains a right to access the public road by operation of law," and therefore, "when a public road

25

is discontinued or abandoned, the abutting landowner retains the private right of access." 171 Vt. at 207, 762 A.2d at 1225 (citation omitted). A common-law right of access "entitles the abutting landowner to reasonable and convenient access." Id. at 209, 762 A.2d at 1226 (quotation omitted). What constitutes "reasonable and convenient access" is a fact-specific inquiry that depends upon the circumstances of each case. Id.

¶ 64. Okemo set forth a straightforward test to determine whether an abutting landowner retains a private right of access over an abandoned or discontinued road: "(1) the person claiming the land must own land that abuts the road, and (2) the road must be a public road." Id. at 207, 762 A.2d at 1225. Applying this test, the superior court determined that landowner's property abuts Stebbins Road and that Stebbins Road had been a public road at the time of the 1838 lease to landowner's predecessor in title. It therefore held that landowner had a common-law private right of access over Stebbins Road. It expressly limited its conclusion to the holding that the right of access exists, explaining that at this stage, the undisputed facts did not allow it to determine the nature and scope of the right of access.

¶ 65. On appeal, neighbors renew their argument that Okemo does not allow an owner to assert a private right of access over a long-discontinued road, particularly in the absence of any evidence that earlier owners used the road to access their property. They maintain that Okemo's holding was limited by an unpublished memorandum decision, Thompson v. Ryan, No. 2006-286, 2007 WL 5313344, at *2 (Vt. Feb. 1, 2007) (unpub. mem.), https://www.vermontjudiciary.org/ sites/default/files/documents/eo06-286.pdf [https://perma.cc/536L-VSU3], or alternatively, by the codification of a right of access in 19 V.S.A. § 717(c). In their reply brief, they squarely contend that § 717(c) codifies and thus displaces Okemo.

¶ 66. We first address neighbors' contention that Thompson limited Okemo's holding such that a common-law private right of access only exists over a discontinued highway where no alternative access exists. We conclude that it did not. Even if Thompson was binding authority,

which it is not, it does not stand for the proposition that a common-law private right of access exists only where the discontinued road provided the sole means of access to a property.

¶ 67.    In Okemo, the property owner could only access his property through the disputed route.  As such, the decision did not directly address whether a common-law right of access exists over a discontinued public road if the landowner has alternative access.  In Thompson, the plaintiff owned property that he generally accessed over Route 14.  On occasion, however, he used a former town highway, discontinued in 1902, to hunt or log on his property.  This Court upheld the superior court's conclusion that the plaintiff had a right of access over the discontinued highway limited to his need to access that part of the property to hunt or log.  Thompson, 2007 WL 5313344, at *2.  The Court rejected the plaintiff's arguments that the right of access should be unlimited, noting that he only showed that he reasonably needed the access for hunting and logging and did not show that he needed to use the discontinued highway for ingress and egress.  Id.  Accordingly, Thompson did not address the issue of whether a common-law right of access for ingress and egress can exist over a discontinued highway where the property owner has alternative access.

¶ 68.    We do not suggest, however, that alternative access is entirely irrelevant.  Okemo emphasizes that an abutting landowner is entitled to "reasonable and convenient access," which is a fact-specific inquiry.  171 Vt. at 209, 762 A.2d at 1226.  In some circumstances, alternative access to a property may be relevant to determining whether access over a discontinued or abandoned road is reasonable or convenient.  See, e.g., In re Town Highway 26, No 2014-386, 2015 WL 2383677, at *5 (Vt. May 14, 2015) (unpub. mem.), https://www.vermontjudiciary.org/ sites/default/files/documents/eo14-386.pdf   [https://perma.cc/ND6U-7928]   (determining   that landowners not entitled to access over road reclassified as legal trail simply because it was more convenient where alternative access over public highway existed).  We merely note that this Court has never held that the existence of alternative access extinguishes a common-law right of access as a matter of law.

¶ 69. We next consider whether 19 V.S.A. § 717(c) displaced the common-law doctrine espoused in Okemo. To properly address this question, we first clarify a predicate issue. Neighbors argue that, regardless of which law applies, neither Okemo nor § 717(c) can provide a right of access almost 100 years after the road was discontinued without evidence that the intervening owners exercised their right of access. We agree with neighbors that both the common-law and statutory rights of access arise at the time that the road is discontinued. Section 717(c) provides that where a landowner's sole means of access to their property "is by way of a town highway or unidentified corridor that is subsequently discontinued," the landowner "shall retain a private right-of-way" over the former road or unidentified corridor for necessary access and maintenance. Likewise, Okemo provided that "when a public road is discontinued or abandoned, the abutting landowner retains the private right of access." 171 Vt. at 207, 762 A.2d at 1225. Each of these provisions plainly contemplate that the right arises at the time of discontinuance. Accordingly, if landowner retains a private right of access over Stebbins Road, any right would have necessarily arisen at the time the road was discontinued in 1904.

¶ 70. With this understanding, we need not determine whether § 717 displaces Okemo in this case. Section 717(c) was passed in 2006 as part of Act 178. 2005, No. 178 (Adj. Sess.), § 4. Because § 717(c) took effect in 2006, the statute could not retroactively provide a right of access in 1904. See Smiley v. State, 2015 VT 42, ¶¶ 17-18, 198 Vt. 529, 117 A.3d 411 (explaining that only procedural or remedial statutes, which "do not involve the creation of duties, rights, and obligations," may apply retroactively (quotation omitted)); cf. 1 V.S.A. § 214(b) (providing that amendment of statutory provision shall not "affect any right, privilege, obligation, or liability acquired, accrued, or incurred prior to the effective date of the amendment"). Moreover, Act 178 expressly states that it "shall not affect a suit begun or pending at the time of its passage," further suggesting that it only applies prospectively. 2005, No. 178 (Adj. Sess.), § 14.

28

¶ 71. Consequently, we turn to Okemo. For the following reasons, we reject neighbors' suggestion that Okemo cannot "resuscitate" or "revive" a common-law right of access for a successor in title who did not own the land at the time of discontinuance absent evidence that prior owners used the road for access.

¶ 72. In holding that an abutting landowner retains a private right of access over a discontinued road, Okemo relied on well-established principles of property law. See 171 Vt. at 207, 762 A.2d at 1224-25. This Court has long recognized that a landowner enjoys two types of rights over an abutting public road: a public right to use the road, shared with the general public, and a private right to use the road to access the property which arises as an incident of property ownership. Kelbro, Inc v. Myrick, 113 Vt. 64, 68, 30 A.2d 527, 529 (1943); accord Skinner v. Buchanan, 101 Vt. 159, 165, 142 A. 72, 74 (1928). We have further explained that "it is important that owners of lots abutting on streets have the free and uninterrupted use of the margin of the street for the beneficial use and enjoyment of their lots, subject only to the easement of the public," because if the property were sold without including the rights in the road, the seller "may deprive his [or her] grantee of the means of entry into, and exit from, [the property] at points most convenient." Elliott v. Jenkins, 69 Vt. 134, 139, 37 A. 272, 273 (1896). In relying on these principles, Okemo therefore recognized the right of access as a longstanding and fundamental element of owning property that abuts a public highway. It necessarily follows that the right of access runs with the land through the chain of title. Cf. Barrett v. Kunz, 158 Vt. 15, 18, 604 A.2d 1278, 1280 (1992) (explaining that "[a]ppurtenant easements serve a parcel of land, rather than a particular person," and therefore "pass[] with subsequent conveyances, even if the specific language of the right-of-way is not repeated").

¶ 73. The Supreme Court of New Hampshire recently came to the same conclusion in a similar case. See Shearer v. Raymond, 259 A.3d 818 (N.H. 2021). In Shearer, the plaintiff purchased a parcel of land in 2004 that abutted a public road that had been discontinued in 1898.

As in this case, the discontinued road began at a public highway, crossed over the defendant's property to abut the plaintiff's property, and continued beyond that point. The defendant sought to prevent the plaintiff from using the discontinued road to access his property. The plaintiff sued, contending that he retained an easement over the discontinued road, and asked the court to enjoin the defendant from interfering with his right to access his property over the easement. In holding that the plaintiff had an easement over the discontinued road to access the property, the court first noted that although the New Hampshire Legislature codified a right of access over discontinued highways in 1943, that right did not exist at the time the road was discontinued. Id. at 824. It therefore turned to the common law, which demonstrated "that the right of access to one's property is fundamental to property ownership." Id. It also noted that the majority of jurisdictions have determined that abutting landowners retain easements for reasonably necessary ingress and egress over discontinued highways. Id. at 824-25. It reasoned that, "absent a statutory right of access as first codified in 1943, the discontinuance of a highway could leave a landowner without reasonable means to access the property" and therefore concluded that "an easement exists over a discontinued highway when the easement is reasonably necessary for access." Id. at 826. Notably, the court did not consider whether the previous owners of the plaintiff's property exercised the right of access in concluding that the plaintiff enjoys one today.

¶ 74.    Accordingly, we agree with the superior court that the common-law right of access must be an ongoing incident of property ownership to have any real meaning. Neighbors' interpretation would raise the concern that, without evidence regarding a prior owner's use of a right of access, subsequent owners may be denied fundamental property rights without compensation. See U.S. Const. amend. V (prohibiting taking of private property for public use without just compensation); Vt. Const. ch. I, art. 2 (same); Okemo, 171 Vt. at 211, 762 A.2d at 1127 (concluding that prohibition of use of road in winter represented "taking of [plaintiff's] property right of access without compensation"); Skinner, 101 Vt. at 165, 142 Vt. at 74 (abutting

30

owner's right to access is property right "of which an abutter cannot be unlawfully deprived"). Moreover, it could have the unintended effect of leaving land inaccessible, contrary to public policy. See Traders, Inc. v. Bartholomew, 142 Vt. 486, 493, 459 A.2d 974, 979 (1983) (noting public policy concern "that land not be left inaccessible and unproductive"). As the right of access is ongoing and passes through the chain of title, we reject neighbors' argument that the superior court prematurely concluded that landowner has a private right of access before considering the prior owner's use of Stebbins Road.

¶ 75. In conclusion, to prevail on his claim against the Town for breach of the covenant of quiet enjoyment, landowner needed to show that the Town interfered with his ability to access and therefore use and enjoy his land. The previous property owners enjoyed a common law private right of access over Stebbins Road once the road was discontinued in 1904, and that right of access passed to landowner through the chain of title. Accordingly, landowner cannot prove that the Town interfered with his ability to access his property, and the superior court properly granted summary judgment for the Town on this claim. We emphasize, as the superior court did, that this conclusion does not conclusively determine the extent and scope of the right of access, or whether neighbors have adversely possessed or used the road. But even if the superior court later determines that one or more of those issues limits or prevents landowner from accessing his property over the road, such interference cannot be attributed to the Town.

Affirmed.

FOR THE COURT:

_____
Chief Justice

¶ 76. **DOOLEY, J. (Ret.), dissenting.** Occasionally, in a case that has been before this Court multiple times in various forms, the need to bring about finality and a just result requires a revisiting of earlier decisions rather than pushing forward in the previously determined direction.

The convoluted procedural history in this case necessitates such a reexamining of a prior decision. The majority purports to attain finality and justice by affirming the trial court's decision on remand, which was a relitigation of a 2010 case that produced a judgment, affirmed on appeal, for Dale and Brenda Merritt (neighbors) that Steven Daiello (landowner) had no right to access his property by a road that goes through neighbors' property. The majority's result may bring finality, but it does not achieve justice. The majority has revisited the wrong decision and achieved injustice. The right decision to reevaluate is the 2018 decision of this Court in the same case before us again now, but with neighbors now joined as parties, Daiello v. Town of Vernon, 2018 VT 17, 207 Vt. 139, 184 A.3d 1192. I would strike this Court's 2018 decision and the trial court decision that followed on remand and affirm the trial court's initial order.

¶ 77.    Before I explain the reasons for revisiting the 2018 decision, and not the 2010 decision, I address why revisiting the 2018 decision is entirely proper in this case. Generally, revisiting prior rulings of the Supreme Court, in the same case, is blocked by the law-of-the-case doctrine. In In re FitzGerald, this Court stated the general rule: "The law-of-the-case doctrine provides that a decision in a case of last resort is the law of that case throughout all the subsequent proceedings therein, and no question will be reconsidered by the Court." 2020 VT 14, ¶ 35, 212 Vt. 135, 229 A.3d 446 (quotation and alternations omitted). From the earliest days of the doctrine's development, this Court has recognized there is flexibility in its application. In Pellon v. Connecticut General Life Insurance Co., 107 Vt. 129, 138, 178 A. 902, 906 (1934), the Court stated the general rule but added: "However stringent may be the practice in refusing to reconsider what has been done, it still is but practice, not want of jurisdiction, that makes the rule. If we should become satisfied that we had made a mistake, we have power to reopen and reconsider a matter." See also Kneebinding, Inc. v. Howell, 2018 VT 101, ¶ 31, 208 Vt. 578, 201 A.3d 326 (explaining that law of case is rule of practice, from which court may depart in proper case). In more recent cases, the test for exceptions to the application of rule of the case has been whether an

exception is warranted because exceptional circumstances are present, such as "a substantial change in facts or evidence giving rise to the dispute in the matter or because the prior holding was clearly erroneous and would create manifest injustice if followed." State v. Gomes, 166 Vt. 589, 591, 690 A.2d 351, 353 (1996) (mem.) (quotation omitted).

¶ 78. Here, the 2018 appellate decision meets the criteria exactly. It was clearly erroneous and creates manifest injustice, such that it must be overturned. To understand why this is so, I summarize the long and convoluted litigation history between landowner, neighbors, and the Town of Vernon.

¶ 79. Neighbors have owned their land in Vernon for over fifty years. Neighbors have access to their property from the east over an undisputed public way, known as Stebbins Road or West Road, which terminates within neighbors' property because the remainder of Stebbins Road was discontinued by the Town in 1904.[12] The path that was part of Stebbins Road continues west and eventually borders landowner's property on the north. The path goes within a few feet of neighbors' house and farm buildings.

¶ 80. Landowner purchased his property interest in land to the west of neighbors in 2000-2001 and began to construct a vacation home. Because the land is glebe land, he has a perpetual durable lease of the property. See 24 V.S.A. §§ 2401, 2403. Landowner sought to improve the path running across neighbors' property to access his land. He asserted a right to use this path to access his property through various legal mechanisms. Landowner's right to access this path, and thus the legal status of the western part of Stebbins Road, has been the focus of the past and current litigation. Throughout all the legal proceedings, neighbors have participated in the court process whenever noticed and sought to protect their interests.

---

[12] As explained in more detail later, there is a dispute as to whether the road was officially laid out by the Town, but it is undisputed that if a Town road existing prior to 1904, it was discontinued at that time.

¶ 81. Landowner first sought to have the Stebbins Road section up to his house declared a public road through an administrative proceeding in the Public Service Board, regarding utility access. See In re Doolittle Mountain Lots, Inc., 2007 VT 104, 182 Vt. 617, 938 A.2d 1230 (mem.). Neighbors intervened in that proceeding, and the case was dismissed for lack of jurisdiction. When landowner continued to assert a right to use the path, and the parties could not resolve their differences, neighbors filed a complaint in the civil division seeking a declaratory judgment that landowner had no legal right of access over the path. Merritt v. Daiello, No. 2010-171, 2010 WL 7799806, at *2 (Vt. Oct. 21, 2010) (unpub. mem.), https://www.vermontjudiciary.org/ sites/default/files/documents/eo10-171.pdf [https://perma.cc/2WEZ-Q2AF].

¶ 82. It is undisputed that the section of Stebbins Road involved in this decision was discontinued by the Selectboard of the Town of Vernon in 1904. Landowner asserted, however, that despite the discontinuance of Stebbins Road, he had a right of access over the discontinued road as a person who owned land that abutted it. He argued that such access in these circumstances was provided in Okemo Mountain, Inc. v. Town of Ludlow, 171 Vt. 201, 207, 762 A.2d 1219, 1225 (2000) and in 2006 by statute, 19 V.S.A. § 717(c). Neighbors' complaint acknowledged that landowner had some form of access but did not have the right to develop his land with additional houses using that access. Thus, as originally filed, the main issue in the case involved the nature and extent of defendant's access.

¶ 83. The nature of the case expanded when neighbors amended the complaint, with approval of the court, to allege that the portion of the Stebbins Road between them and landowner had not been laid out as a public road and therefore landowner did not have a right to use it.[13] They did not join the Town of Vernon in this action.

---

[13] This claim was asserted in an amendment to the original complaint, allowed by the trial court. Landowner has argued in later proceedings that the amendment came at the last moment so he did not have time to prepare a complete response to it. In fact, well over a year transpired between the date the motion to amend was granted and the date of the trial in the case.

¶ 84. In 2009, the trial court held a two-day trial at which both parties submitted evidence regarding the history and status of the road. Neither party sought to join the Town of Vernon in the litigation. Based on the evidence, the trial court found that a road was not officially created by the Town and landowner therefore did not have a right of access over it. The court also found that landowner's property was not landlocked because there was alternate access from the west and that therefore there was no easement by necessity. Landowner appealed on several grounds, including that the evidence showed that the Town had in fact established the road. This Court rejected landowner's argument and affirmed, concluding that there was sufficient evidence to support the trial court's finding that the Town did not lay out a road across the western portion of Stebbins Road. Daiello, 2010 WL 7799806, at *3. This Court further concluded that landowner did not have an easement by necessity because landowner had failed to demonstrate that there was a common division of land resulting in landlocked status. Id. at *4; see Okemo, 171 Vt. at 206, 762 A.2d at 1224 (stating requirements for easement by necessity). The Court did not address the question of whether landowner's parcel was landlocked because the finding of the trial court was relevant only to whether landowner could establish an easement by necessity and that claim was answered by the finding that there was no common division of land.

¶ 85. In 2014, landowner filed suit against the Town for violation of the right to quiet enjoyment. He did not join neighbors in this action. This new round of litigation involved one claim—that the Town had breached an implied covenant of quiet enjoyment by leasing glebe lands to his predecessor in interest without ensuring a right of access to the leased property. In the context of this argument, landowner took the opposite position of the one he had taken in the litigation with neighbors, arguing this time that the road was not officially laid out. Without neighbors in the suit, it was in the interest of both sides in the litigation—the Town and landowner—to reopen the question of whether the Town had laid out a road and to determine that it had been. For the Town, a properly laid out road provided a defense to landowner's quiet-

enjoyment claim. For landowner, a properly laid out road gave him a right of access to his property from the east—exactly the relief he had been seeking for around twenty years.

¶ 86. The Town moved for summary judgment, asserting that the 2010 decision bound landowner as a party but not the Town. The Town asserted that the 2010 Supreme Court decision estopped landowner from claiming that he did not have access to his land because the trial court decision in that case had found that landowner had alternative access to his property from the west. The Town also claimed that because it was not a party to the 2010 litigation, it was not bound by the holding regarding the road's status and could assert as a defense to the quiet-enjoyment claim that the Town had in 1801 actually laid out Stebbins Road to the west of neighbors' land.

¶ 87. Landowner responded to the Town's claim that the Town could litigate whether Stebbins Road going from the neighbors' property to landowner's land had been validly laid out because it was not a party to the litigation between the neighbors and the landowner. Citing Vermont Rule of Civil Procedure 19, "Joinder of Persons Needed for Just Adjudication," landowner argued that the Town could not relitigate whether the portion of Stebbins Road in dispute was properly laid out unless it joined neighbors. Otherwise, he argued, he would be left without road access to his lot but would be unable to enforce the covenant against the Town.

¶ 88. The Town argued that it could defend on the basis the road was properly laid out because it would affect only landowner's ability to use it and would not affect the validity of the judgment between neighbors and landowner. It argued that if landowner wanted neighbors to be parties, he should join them in the case. Essentially the issue reached a stalemate; neither party joined the neighbors, and the trial court did not order joinder.

¶ 89. The trial court granted summary judgment to the Town. The court determined that landowner was bound by the findings in the 2010 action that landowner had access to his property from the west and that Stebbins Road had not been properly laid out. The court concluded that

based on these established findings as a matter of law the Town did not breach the implied covenant of quiet enjoyment.

¶ 90.    Despite its ruling, the trial court addressed two of the three issue-preclusion questions presented by the parties: whether landowner had access to his land from the west and whether Stebbins Road was not properly laid out from neighbors' land through where it abutted the land of landowner.[14]  The trial court opined that despite the prior conflicting judgment, the evidence showed that landowner did not have access to his property from the west and that the Town did lay out the western section of Stebbins Road.

¶ 91.    Addressing the trial judge's opinion on whether landowner had access to his land from the west, landowner moved for reconsideration arguing it was manifestly unfair to apply issue preclusion to a factual finding that was patently wrong.  The motion was denied.

¶ 92.    Landowner appealed to this Court.  Again, neighbors were not involved in the case on appeal, and neither party commented on their absence.  Landowner raised two issues on appeal: (1) the 2010 finding that landowner had access to his land from the west should not have preclusive effect because the Court, in the appeal from the trial court, did not consider and rely upon this finding in affirming the trial court result; and (2) the conclusion that the western section of Stebbins Road was not properly laid out should not have preclusive effect and should be relitigated.  The second issue was curious because it was raised against the Town, and the Town had adopted the same position in the trial court and submitted its alternative view of the law and the record in its motion for summary judgment.  As noted below, the effect was to have no adversary presentation on the main issue in the case.

¶ 93.    The Town responded to each of landowner's argument as well as representing the arguments it made in support of summary judgment but not adopted by the trial court.

---

[14]    The third was whether landowner was entitled to an easement by necessity over neighbors' land.

¶ 94. This brings me to the holdings in the 2018 decision of this Court, the decision I assert must be revisited. There are four main holdings in the 2018 decision: (1) the trial court's conclusion in the 2010 case between neighbors and landowner that landowner had access to the land from the west could be relitigated because the Court did not rely on that conclusion in its affirmance;[15] (2) because the Town was not a party in the 2010 case, it was "not precluded from arguing that Stebbins Road was separately laid out as a public road," Daiello, 2018 VT 17, ¶ 21; (3) if the parties must litigate whether the western section of Stebbins Road was laid out, "that issue is back on the table, even as to [neighbors], who will become an indispensable party," id. ¶ 24; and (4) relitigation is appropriate because "the Town was not joined in the first action despite the nature of the issue" and where, as a result of the non-joinder of the Town, "there is a real potential for inconsistent judgments impacting the Town's responsibilities and plaintiff's rights." Id. I will explain why holdings (3) and (4) were wrongly decided below. First, however, I will explain why the 2018 decision of this Court created a manifest injustice that allows us to correct it now.

¶ 95. As I emphasized above, the only parties in the 2018 decision were landowner and the Town of Vernon and not neighbors. As this Court said in the 2018 decision "[t]here is no suggestion in the record that the Town declined to take part in the prior suit brought by [neighbors] or even that it was aware of that suit." Daiello, 2018 VT 17, ¶ 21. That sentence, with the names changed, is exactly the situation here. There is no indication in the record in this case that neighbors refused to join this case or were even aware of it.

---

[15] The 2018 decision of this Court says that landowner challenged the application of issue preclusion to the finding on whether the property was landlocked as part of his argument that he was entitled to an easement by necessity to his landlocked property. Daiello, 2018 VT 139, ¶ 6. It added that the trial court found there was no easement by necessity because it found the property was not landlocked. In fact, landowner had no easement by necessity because he admitted he could not meet a different, and unrelated, element of an easement by necessity. See Daiello, 2010 WL 7799806, at *4.

¶ 96. While the 2018 decision in this case is phrased in terms of applying issue preclusion, its effect is to nullify neighbors' 2010 judgment. If the judgment precludes no one from using Stebbins Road as a road in the section between neighbors' property and landowners' property, it has been nullified. At this point, I will not get into the details of issue preclusion. The elements of issue preclusion are laid out thoroughly in the 2018 decision, and I do not dispute the general law in that decision. As discussed below, it is the application of issue preclusion principles in the 2018 decision that I dispute.

¶ 97. I used the sentence from the 2018 decision regarding the Town's absence in the 2010 case because the rationale the Court used to hold that the 2010 judgment couldn't have preclusive effect—that the parties failed to join the Town in the litigation—is exactly the failure that occurred in the 2018 decision. Thus, the decision is internally inconsistent. The 2018 opinion states that the 2010 decision couldn't have an effective judgment because the Town was not joined or notified. Following the Court's rationale, the 2018 opinion also cannot have preclusive effect because neighbors, clearly necessary parties, were not joined. The Court stripped neighbors of their 2010 judgment in a flawed proceeding and that action is therefore ineffective.

¶ 98. This is not simply a procedural error. The U.S. Supreme Court has held that "[i]t is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." Parkland Hosiery Co. v. Shore, 439 U.S. 322, 327 n.7 (1979); see also Blander-Tongue Lab'ys, Inc. v. U. of Ill. Found., 402 U.S. 313, 329 (1971); Hansberry v. Lee, 311 U.S. 32, 40 (1940); United States v. Daugerdas, 892 F.3d 545, 557 (2d Cir. 2018) (applying Parkland Hosiery). Thus, in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, this Court in its 2018 decision in Daiello invalidated the judgment held by neighbors regarding ownership of their property without an easement held by landowner. It is difficult to imagine a more compelling reason why the decision can and should be reconsidered.

39

¶ 99. There were other aspects of the 2018 decision that contributed to its manifest injustice. On the main issue in the case—whether neighbors had an effective judgment against landowner—there was no adversary proceeding. Both parties in the 2018 case wanted neighbors' judgment to go away. Landowner wanted it to go away so he could relitigate whether Stebbins Road was properly laid out with new evidence and new support; the Town wanted to relitigate it so landowner gained effective access to his land and, therefore, had no case against the Town. It is one thing to leave out a significant voice in the decisional process; it is another to leave out the only voice against the final decision.

¶ 100. Another basis to revisit the 2018 decision is the same rationale the Court used to strip neighbors of their 2010 judgment—lack of preservation. Neither of the parties in the 2018 appeal argued that the 2010 judgment should be stripped from neighbors on this ground in either the trial court or in this Court.

¶ 101. Finally, there was a clear alternative result that would have been consistent with the Court's concern. The Court could have ordered neighbors to be joined in the appeal, redefined the issue to include the rationale that it ultimately adopted, and ordered new briefing and a new argument if an argument had already occurred. That path, while unusual, would have avoided the manifest error that occurred. I recognize, however, that while that path was available in 2018 before the Court ruled that issue preclusion did not apply, it is more difficult to put the genie back in the bottle now.

¶ 102. Having explained why I believe the 2018 decision resulted in manifest injustice that overcomes any law-of-the-case barrier to reopening the 2018 decision, I turn to why I believe the decision is wrong on its merits.

¶ 103. In short, neighbors were stripped of their judgment because they and landowner failed to join Town of Vernon in neighbors' declaratory-judgment case. The decision is ostensibly

40

based upon the requirements of Rule 19(a), a rule that is substantially identical to Federal Rule of Civil Procedure 19(a). For a number of reasons, I believe this holding is wrong.

¶ 104. Of course, the main error is that it was reached without neighbors' involvement. The Court's holding was: "Accordingly, assuming . . . the superior court is compelled by the Town's position to decide whether Stebbins Road was properly laid out, that issue is back on the table, even as to [neighbors], who will become an indispensable party." Daiello, 2018 VT 17, ¶ 23. It is obvious that if neighbors are indispensable parties after the Court stripped them of their judgement, they were indispensable parties when the Court was considering whether to strip them of their judgment.

¶ 105. The second reason is directly related to the rationale that the Court adopted for stripping neighbors of their judgement. As I noted above, no party made this argument in either the trial court or the Supreme Court. Therefore, there was no record on which to address the argument. This is obvious from the Court's statement on the Town's action or inaction with respect to the litigation: "There is no suggestion in the record that the Town declined to take part in the prior suit brought by [neighbors] or even that it was aware of that suit." Id. ¶ 21. There is nothing in the record about this subject because no one raised it. The Court goes on to note that nonparties "who have deliberately bypassed an opportunity to intervene," id. (quotation omitted), may be bound by judgments without confronting the reality that there is no way to know what the Town did without a record.

¶ 106. Exactly because of the problem discussed above, Rule 19(a) has a procedural requirement:

> (a) **Persons to be Joined if Feasible.** A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be afforded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of

41

> incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest.

Failure to join a party under Rule 19 may be raised by motion. V.R.C.P. 12(b)(7). Under Vermont Rule of Civil Procedure 12(h)(2), failure to join can be raised as late as in the trial on the merits. Here, it was not raised by the parties or the court <u>at any time</u>. In <u>171234 Canada, Inc. v. AHA Water Cooperative, Inc.</u>, 2008 VT 115, 184 Vt. 633, 968 A.2d 303 (mem.), after the trial court had granted the plaintiff's motion for summary judgment, the defendant moved to dismiss the action for failure to join a necessary party. The trial court denied the motion, and we affirmed holding that a motion for failure to join must be timely filed and the time limit for raising the issue was when the motion for summary judgment was granted. <u>Id</u>. ¶¶ 17-20. In this case, the issue of whether a necessary party under Rule 19 should have been joined was raised eleven years after the judgment was issued and ten years after the judgment was upheld on appeal. It was too late to consider this issue.

¶ 107. Third, and most important, Rule 19(a) did not require joinder of the Town. In saying this, I recognize that this Court has decided many ancient roads cases where the issue was whether an ancient road was properly laid out, and in most of these cases the Town was a party. See, e.g., <u>Austin v. Town of Middlesex</u>, 2009 VT 102, 186 Vt. 629, 987 A.2d 307 (mem.); <u>Town of Bethel v. Wellford</u>, 2009 VT 100, 186 Vt. 612, 987 A.2d 956 (mem.); <u>Town of South Hero v. Wood</u>, 2006 VT 28, 179 Vt. 417, 898 A.2d 756; <u>Druke v. Town of Newfane</u>, 137 Vt. 571, 409 A.2d 994 (1979). The inclusion of the towns in those cases was because the towns were representing citizens who wanted to use a legally valid road or were opposing the imposition of a maintenance obligation for a road that the Town did not believe was legally valid. Irrespective of what occurred in the 2010 litigation, the public has no current right to use Stebbins Road, and the Town has no obligation to maintain it. Neither of these interests relevant in the list of cases above applies here because the section of Stebbins Road in issue was discontinued as a public road in 1904.

¶ 108. It is hard to read the 2018 decision without concluding that this Court thought this case was just another ancient road case like all the others and, of course, the Town needed to be joined. Thus, its opening discussion in ¶ 20 said: "Notwithstanding [neighbors'] claim in their amended complaint in Merritt v. Daiello that plaintiff was not entitled to access his property via Stebbins Road because the Town had never properly laid out the road as a public road, neither [neighbors], nor [landowner], nor the trial court joined the Town in that action." Daiello, 2018 VT 17, ¶ 20. The Court went on to state: "Notwithstanding their challenge to the Town having properly laid out Stebbins Road as a public road, [neighbors] did not join the Town in that action." Id. ¶ 26. In its ultimate conclusion, the Court stated:

> We can say, however, that by not joining the Town in their earlier action seeking to prevent plaintiff from accessing his property through their property, [neighbors] ran the risk that issues resolved in that litigation would be subject to relitigation in any later action involving the Town and themselves as indispensable parties. As between [neighbors] and plaintiff, we conclude that [neighbors] had the greater obligation to join the Town in the earlier action, insofar as they brought the action to exclude plaintiff from the ingress and egress across their property and they were the party claiming that the Town had not properly laid out the road that was subject to their lawsuit.

Id. ¶ 29.

¶ 109. In fact, neighbors could not have joined the Town for failing to properly lay out Stebbins Road even if they had wanted to. The Court somehow understood that the Town was facing liability for mishandling the layout of the road. There was and is no such legal theory. Indeed, the Town could have decided to stop taking the necessary steps to set out the road because it decided that it did not want a road in that location. It had no legal obligation to lay out the road, and nothing in neighbors' suit against landowner claimed it did.

¶ 110. In that stage of the litigation, landowner based his right to use old Stebbins Road for access on 19 V.S.A. § 717(c):

> A person whose sole means of access to a parcel of land or portion thereof owned by that person is by way of a town highway or

43

> unidentified corridor that is subsequently discontinued shall retain a private right-of-way over the former town highway or unidentified corridor for any necessary access to the parcel of land or portion thereof and maintenance of his or her right of way.

As the wording explicitly states, the effect of the statute is to give a "private right-of-way" if the landowner qualifies. It has no effect on the status of Stebbins Road as a discontinued town highway.

¶ 111. Properly understood, the 2010 litigation did not involve Rule 19(a) to the extent that it would require joinder of the Town as an interested person. It did not involve Rule 19(a)(1) because complete relief could be afforded the existing parties without joining the Town or anyone else. The sole issue in the suit was whether landowner had a private right of way over neighbors' land under 19 V.S.A. § 717(c) and, if so, whether there were any restrictions on that access. Neighbors' complaint sought only a declaratory judgment on that issue. See Williams v. Fanning, 332 U.S. 490, 494 (1947) (holding that absent party is not indispensable if judgment does not require absent party "to do a single thing"); Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Mun. of San Juan, 773 F.3d 1, 14 (1st Cir. 2014) (applying Williams to F.R.C.P. 19(a)(1)); Disabled Rts. Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 879 (9th Cir. 2004) (requiring that to meet Rule 19(a)(1), relief without absentee party must be consummate and not partial or hollow).[16]

¶ 112. Additionally, Rule 19(a)(2) did not apply because no person claimed an interest "relating to the subject of the action." The only interest of the Town that emerged years after the litigation was concluded related to landowners' claim that the Town as the lessor of the glebe land was required to create and maintain an access for landowner who was the tenant and the Town was sued by landowner. Only landowner or the Town could have claimed that interest. As the 2018 decision states, there is no evidence the Town knew of the 2010 litigation between neighbors and

---

[16] With minor differences in language that have no substantive effect, Vermont Rule 19(a) is identical to Federal Rule 19. Thus, the federal cases cited in the text are dealing with identical language.

landowner, and no evidence it was aware of landowner's possible legal theory in an action against it. To the extent that landowner was aware of his litigation options at the time of the original litigation, he failed to disclose them. There is no evidence that neighbors knew anything about that possible interest at the time of the litigation. Since no one raised it, the trial court was entirely unaware of any interest in the Town.

¶ 113. Even if we get beyond the general requirements of Rule 19(a)(2), the case must meet one of two specific circumstances to require the joinder of a new party: (1) the person's absence may "as a practical matter impair or impede the person's ability to protect that interest," or (2) the person's absence may "leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the person's claimed interest." The first specific requirement is clearly not met as recognized in the Court's 2018 opinion because the Town, as a nonparty, was not bound by the declaratory judgment in the earlier case. See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1040 (11th Cir. 2014). In fact, the Town was better off not being a party because landowner was litigating what became the Town's position and, if he prevailed, the Town would have had no reason to have litigated at all.

¶ 114. Nor is the second alternative requirement regarding the risk of multiple or inconsistent obligations met. Superficially, this alternative appears to apply to the existing parties, particularly landowner. Certainly, landowner faces inconsistency regarding whether Stebbins Road was laid out and the possible inability to obtain a remedy to the property's landlocked status. But Rule 19 is not about inconsistency alone. The key word in Rule 19(a)(2) is "obligations." Landowner may face inconsistent rationales or results but not inconsistent obligations. As the U.S. Court of Appeals for the First Circuit explained:

> Inconsistent obligations are not . . . the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent

45

adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.

Delgado v. Plaza Las Ams., Inc., 139 F.3d 1, 3 (1st Cir.1998) (per curiam) (quotation and citations omitted); see also Winn-Dixie Stores, Inc., 746 F.3d at 1040; Sch. Dist. of Pontiac v. Sec'y of U.S. Dep't of Educ., 584 F.3d 253, 282 (6th Cir.2009) (en banc) ("[I]nconsistent obligations arise only when a party cannot simultaneously comply with the orders of different courts."); Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California, 547 F.3d 962, 976 (9th Cir.2008) ("We adopt the approach endorsed by the First Circuit [in Delgado].").

¶ 115. Inconsistent obligations occur when compliance with one order requires a person to violate another order. In this case, landowner does not face inconsistent obligations. His only obligation is to comply with the order in the 2010 case and not use Stebbins Road for access. The trial court's initial judgment in his quiet-enjoyment case denied him relief against the Town based on his lack of access. That order contained no obligation applicable to landowner, much less an inconsistent obligation.

¶ 116. Rule 19(a)(2)(ii) is drafted the way it is because issue preclusion is designed to prevent inconsistent obligations not inconsistent rationales or results. The contrary statement in the 2018 decision that the situation faced by landowner after he lost both the 2010 and 2014 cases was what issue preclusion was designed to prevent is a misstatement of the law. See Daiello, 2018 VT 17, ¶ 21.

¶ 117. Finally, the Court in the 2018 decision relied upon two sections of the Restatement (Second) of Judgements (1982) for the proposition that fairness required that landowner not be bound by the judgment against him in the suit by neighbors. One is § 29 which provides in comment e that "where a plaintiff brings a subsequent action involving the same issues against a person whom he could appropriately have joined as a co-defendant in the first action, only strongly compelling circumstances justify withholding preclusion." See Daiello, 2018 VT 17, ¶ 26. Here,

landowner is the plaintiff bringing a subsequent action against the Town and seeking to escape the effects of issue preclusion. Landowner could have joined the Town in the prior suit and, having failed to do so, should bear the consequences of the lack of joinder. This is consistent with the other provisions of the Restatement, which explain that a party precluded from relitigating an issue with an opposing party is also precluded from relitigating it with another person unless the party "lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue." Restatement (Second) of Judgements § 29. In assessing whether to allow an opportunity to relitigate, circumstances to consider include whether "[t]he person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary." Id. § 29(3). Landowner had a full and fair opportunity to litigate the road's status in the declaratory-judgment action. Landowner is now the one seeking to avoid unfavorable preclusion, but he could have effected joinder of the Town, his present adversary, in the prior action.

¶ 118. This is a point that pervades this case. Landowner had a full and fair opportunity to litigate, and a strong motive to do so, in the litigation leading to the 2010 decision and lost on both the issue of whether his property had no access and was landlocked and whether Stebbins Road was properly laid out. He could have assessed what he would have done next if he lost and joined the Town based on his theory that they were responsible to provide him and access. The Town would have been a strong ally in his claim that Stebbins Road was properly laid out, and landowner would have been much more likely to prevail the first time around. Ultimately, his argument to this Court was that because of the deficiencies in his actions, neighbors should lose their judgment. Fairness demands that neighbors keep their judgment, not lose it.

¶ 119. The Court in the 2018 opinion also relied upon Restatement (Second) of Judgments § 28(5) based on the lack of foreseeability that the litigation between landowner and the Town would occur and issue preclusion would arise in this case. Daiello, 2018 VT 17, ¶ 24. The Court

improperly focused on whether the exact claim landowner brings now was foreseeable to the parties in the declaratory-judgment action. Given that the 2010 decision of this Court left landowner's property landlocked, it was foreseeable that further litigation of some sort would occur.

¶ 120. The proper focus is not on whether the parties could foresee the exact claim but on whether it was foreseeable that the issue would be the focus of a later action. "Issue preclusion should not apply where it was unforeseeable that an issue would arise in the context of a later action; however, such instances are rare." Gardner v. Hartford Ins. Accident & Indem. Co., 659 N.W.2d 198, 204 (Iowa 2003). The main focus of the foreseeability question is "whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment." Restatement (Second) of Judgments § 27 cmt. j. Here, the status of the road was essential to the judgment and was absolutely recognized by the parties as important. Although the parties in 2010 may not have foreseen that the road's legal status before 1905 would arise in exactly this kind of subsequent action, certainly both landowner and neighbors recognized that the status of the road was a very important issue and litigated it vigorously. Moreover, if any party had reason to believe that the road's status would be relevant to subsequent litigation with the Town, it was landowner.

¶ 121. This brings me to the elephant in the room—the failure of neighbors to challenge the 2018 decision either in the trial court or in this Court. With respect to the trial court's consideration, the trial court had no power to change the decision of the Supreme Court. The mandate contained in the Supreme Court decision stated that "The superior court's September 21, 2016 and June 13, 2017 decisions are reversed, and the matter is remanded for further proceedings consistent with this opinion." Daiello, 2018 VT 17. The superior court was required to implement this mandate. See In re N.E. Materials Grp. LLC, 2016 VT 87, ¶ 7, 202 Vt. 588, 151 A.3d 766; Coty v. Ramsey Assocs. Inc., 154 Vt. 168, 171, 573 A.2d 694, 695 (1990). Overturning the 2018

Supreme Court decision would reinstate the earlier superior court decisions, exactly contrary to the requirement of the mandate, and would not be "further proceedings consistent with" the 2018 opinion. Even if the mandate had not been so explicit, the superior court's duty was to implement the decision, not war with it.

¶ 122. With respect to this Court, as I discuss above, this Court has the power to overturn its earlier decision, and I agree that it normally does not consider a claim or argument that has not been briefed as the majority holds. As an exception, however, this Court can waive any preservation requirement where it considers it necessary to properly describe the law whether or not a party sought that description and its application to the circumstances of the case. That is exactly what the Court did in the 2018 decision in this case, and very likely its decision to do so explains in part why the opinion went off in the direction it did.

¶ 123. What the Court did is described above, but I summarize it again here to stress why a failure of preservation should not be a bar to reconsidering the 2018 decision. The 2018 decision in this case reversed the trial court based on a claim never presented to the trial court by either party and therefore never considered by the trial court; never presented to this Court either in the briefs or in the oral argument; and without the participation of the persons who were aligned against the participating parties. I recognize that only the last of these attributes of the 2018 decision is itself error although I consider it unlikely that the fundamental errors in the substance of the decision would have occurred if the Court had insisted on an adversary presentation of the issues before ruling on that substance.

¶ 124. What I cannot accept is that it is fair to insist on preservation to prevent correction of fundamental errors in the 2018 decision after waiving any preservation requirements and making those errors. The 2018 decision should not stand as a precedent of this Court, and the Court should be eager to correct it. By insisting on preservation now, the majority is adding a new layer of unfairness on top of the unfairness that already exists in the 2018 decision.

49

¶ 125.  In summary, I believe the 2018 decision of this Court in this case is fundamentally flawed to the point of depriving neighbors of their due process rights and substantively wrong for the reasons stated above.  Because of the nature of the fundamental flaw, I do not believe it can be saved.  The proper remedy is to strike the opinion, to affirm the first trial court decision in this case, and to reverse the trial court decision on remand.

_____

Associate Justice (Ret.), Specially Assigned